No. 25-1724

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re Tahvio Gratton, Robin J. Shishido, and Dustin L. Collier,
*Petitioners,*

v.

United States District Court for the Eastern District of Washington
*Respondent,*

United Parcel Service, Inc.,
*Defendant and Real Party in Interest*

———————————

On a Petition for Writ of Mandamus Directed to the U.S. District Court
for the Eastern District of Washington
Case No. 1:22-CV-03149
The Honorable Thomas O. Rice

———————————

## SUPPLEMENTAL EXCERPT OF RECORD
### Volume 1 of 1

Blaine H. Evanson
bevanson@gibsondunn.com
Min soo Kim
mkim@gibsondunn.com
GIBSON, DUNN &
CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone:  949.451.3800
Facsimile:   949.451.4220

Theane Evangelis
tevangelis@gibsondunn.com
Madeleine F. McKenna
mmckenna@gibsondunn.com
GIBSON, DUNN &
CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

———————————

*Attorneys for Real Party in Interest United Parcel Service, Inc.*

Joshua R. Zuckerman
jzuckerman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone:  202.955.8500
Facsimile:  202.467.0539

## INDEX

| DATE | DOCKET NO. | DESCRIPTION | SER PAGE |
|---|---|---|---|
| 12/09/2024 | 271 | Defendant United Parcel Service, Inc.'s Motion for a New Trial, Amendment of The Judgment, or Remittitur, or Alternatively, for Limited Post-Trial Discovery | 4 |
| 03/22/2023 | 18 | First Amended Complaint for Damages | 32 |
| 03/20/2023 | 16 | Stipulation and Proposed Order to Allow Plaintiff to Amend Complaint | 49 |
| 10/18/2022 | 1 | Complaint for Damages | 53 |

1  Florence Z. Mao, WSBA #49973
2  florence.mao@ogletreedeakins.com
   Elizabeth A. Falcone, Admitted *Pro Hac Vice*
3  elizabeth.falcone@ogletreedeakins.com
   Michael D. Mitchell, Admitted *Pro Hac Vice*
4  michael.mitchell@ogletreedeakins.com
   OGLETREE, DEAKINS, NASH, SMOAK &
5  STEWART, P.C.
   222 SW Columbia Street, Suite 1500
6  Portland, OR 97201
   Telephone: 503-552-2140
7  Facsimile: 503-224-4518

8  GIBSON, DUNN & CRUTCHER LLP
   THEANE EVANGELIS (*pro hac vice*)
9    tevangelis@gibsondunn.com
   MADELEINE F. MCKENNA (*pro hac vice*)
10   mmckenna@gibsondunn.com
   333 South Grand Avenue
11 Los Angeles, CA  90071-3197
   Telephone:  213.229.7000
12 Facsimile:  213.229.7520

13 *[Additional counsel listed on next page]*

14
   Attorneys for Defendant UNITED PARCEL
15 SERVICE, INC.

16
                  **UNITED STATES DISTRICT COURT**

17
           **FOR THE EASTERN DISTRICT OF WASHINGTON**

18
                           **AT YAKIMA**

19

20 TAHVIO GRATTON,                    Case No. 1:22-cv-03149-TOR

21              Plaintiff,            **DEFENDANT UNITED PARCEL**
                                      **SERVICE, INC.'S MOTION FOR A**
22      vs.                           **NEW TRIAL, AMENDMENT OF THE**
                                      **JUDGMENT, OR REMITTITUR, OR**
23 UNITED PARCEL SERVICE, INC.,       **ALTERNATIVELY, FOR LIMITED**
                                      **POST-TRIAL DISCOVERY**
24              Defendant.

25                                    1/9/2025
                                      With Oral Argument: 1:00 p.m.
26

The Honorable Thomas O. Rice
Trial Date: September 9, 2024

---

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

(5 of 70), Page 5 of 70   Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 5 of 70
Case 1:22-cv-03149-TOR   ECF No. 271   filed 12/09/24   PageID.12268   Page 2
of 28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

GIBSON, DUNN & CRUTCHER LLP
BLAINE H. EVANSON (*pro hac vice*)
  bevanson@gibsondunn.com
MIN SOO KIM (*pro hac vice*)
  mkim@gibsondunn.com
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone:  949.451.3800
Facsimile:   949.451.4220

---

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

(6 of 70), Page 6 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 6 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12269    Page 3
of 28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ......................................................................... 1

II.  LEGAL STANDARD ................................................................... 4

III.  ARGUMENT .............................................................................. 4

    A.  The Jury's Verdict Is Contrary to the Clear Weight of the
        Evidence and Should Be Vacated in Its Entirely ............................ 4

    B.  The Compensatory Damages Award Is Unsupported by
        Evidence and Should Be Vacated or Substantially
        Reduced. ............................................................................ 8

    C.  A New Trial Is Warranted Because Plaintiff's Counsel
        Repeatedly Violated This Court's Motion in Limine
        Orders ............................................................................... 12

        1.  Racially Charged Comments Regarding Time-
            Barred Claims ......................................................... 12

        2.  UPS's Financial Resources, Size, and Power ..................... 16

    D.  A New Trial Is Warranted Because This Court Did Not
        Instruct the Jury on the WLAD's Same-Decision Defense ........... 17

    E.  If the Court Does Not Order a New Trial, It Should Order
        Limited Discovery into Newly Discovered Evidence of
        Perjury ............................................................................. 19

IV.  CONCLUSION ........................................................................... 20

---

i

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

**SER-6**

# TABLE OF AUTHORITIES

## Cases

Page(s)

*Anders v. Waste Mgmt. of Wis.,*
   463 F.3d 670 (7th Cir. 2006) ...................................................................7

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.,*
   69 F.3d 337, 346 (9th Cir. 1995) ....................................4, 12, 14, 17

*Arizona v. ASARCO LLC,*
   773 F.3d 1050, 1053 (9th Cir. 2014) ...................................................10

*Bayer v. Nieman Marcus Grp., Inc.,*
   861 F.3d 853 (9th Cir. 2017) ..................................................................11

*Bell v. Williams,*
   108 F.4th 809 (9th Cir. 2024) ................................................................11

*Brady v. Gebbie,*
   859 F.2d 1543 (9th Cir. 1988) ..........................................................1, 8

*Brown v. Sugarhouse HSP Gaming, L.P.,*
   2024 WL 4350322 (E.D. Pa. Sept. 27, 2024) ..................................15

*Bunch v. King Cnty. Dep't of Youth Servs.,*
   116 P.3d 381, 389 (Wash. 2005) .....................................................8, 11

*Chen v. City of Medina,*
   2013 WL 4511411 (W.D. Wash. Aug. 23, 2013) .............................15

*City of Cleveland v. Peter Kiewit Sons' Co.,*
   624 F.2d 749 (6th Cir. 1980) ..................................................................17

*Cones v. Cnty. of L.A.,*
   2016 WL 7438817 (C.D. Cal. Sept. 28, 2016) ......................12, 15, 16

*Conti v. Corp. Servs. Grp., Inc.,*
   30 F. Supp. 3d 1051 (W.D. Wash. 2014) ...........................................18

*Counts v. Burlington N. R. Co.,*
   952 F.2d 1136 (9th Cir. 1991) ...............................................................18

*Davis v. Dep't of Lab. & Indus.,*
   615 P.2d 1279 (Wash. 1980) ..................................................................18

*Defs. of Wildlife v. Bernal,*
   204 F.3d 920 (9th Cir. 2000) ........................................................3, 19, 20

*Diaz v. Tesla,*
   598 F. Supp. 3d 809 (N.D. Cal. 2022) .................................................10

ii

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

**SER-7**

*Draper v. Airco, Inc.*,
    580 F.2d 91 (3rd Cir. 1978) ..................................................................17

*Flores v. City of Westminister*,
    873 F.3d 739 (9th Cir. 2017) ...................................................................9

*Garcia v. Sam Tanksley Trucking, Inc.*,
    708 F.2d 519 (10th Cir. 1983) ...............................................................17

*Haley v. Pierce Cty.*,
    2013 WL 544017 (Wash. App. Feb. 13, 2013) ...............................3, 17

*Harper v. City of L.A.*,
    533 F.3d 1010 (9th Cir. 2008) ...............................................................10

*Hawkins v. Groot Indus., Inc.*,
    2003 WL 1720069 (N.D. Ill. Mar. 31, 2003) .......................................15

*Hern v. Intermedics, Inc.*,
    2000 WL 127123 (9th Cir. Feb. 3, 2000) ..............................................16

*Hill v. GTE Directories Sales Corp.*,
    856 P.2d 746 (Wash. App. 1993) .......................................................9, 10

*Johnson v. Albertsons LLC*,
    2020 WL 3604107 (W.D. Wash July 2, 2020) ........................................9

*Kingston v. Int'l Bus. Machines Corp.*,
    2022 WL 3031590 (9th Cir. Aug. 1, 2022) ..................................2, 8, 11

*L.A. Mem. Coliseum Comm'n v. Nat'l Football League*,
    791 F.2d 1356 (9th Cir. 1986) .................................................................2

*Lewis v. Festo Corp.*,
    182 F.3 926 (9th Cir. 1999) .....................................................................4

*Morris v. W. Hayden Estates First Addition Homeowners Ass'n*,
    104 F.4th 1128 (9th Cir. 2024) ................................................................4

*Murphy v. City of Long Beach*,
    914 F.2d 183 (9th Cir. 1990) ...................................................................4

*Passantino v. Johnson & Johnson Consumer Prods., Inc.*,
    212 F.3d 493 (9th Cir. 2000) ...........................................................10, 11

*Paul v. Asbury Auto. Grp., LLC*,
    2009 WL 188592 (D. Or. Jan. 23, 2009) ...............................................12

*Pavon v. Swift Transportation Co.*,
    192 F.3d 902 (9th Cir. 1999) .............................................................9, 12

iii

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

**SER-8**

*Sidibe v. Sutter Health,*
    103 F.4th 675 (9th Cir. 2024) ................................................................ 4

*Stone v. City of Indianapolis Pub. Utils. Div.,*
    281 F.3d 640 (7th Cir. 2002) ................................................................ 7

*Swinton v. Potomac Corp.,*
    270 F.3d 794 (9th Cir. 2001) ............................................................ 9, 12

*Teutscher v. Woodson,*
    835 F.3d 936 (9th Cir. 2016) ............................................................... 11

*Turely v. ISG Lackawanna, Inc.,*
    774 F.3d 140 (2d Cir. 2014) .............................................................. 10

*United States v. 4.0 Acres of Land,*
    175 F.3d 1133 (9th Cir. 1999) ............................................................ 1, 4

*Watec Co. v. Liu,*
    403 F.3d 645 (9th Cir. 2005) ................................................................ 4

*Zhang v. Am. Gem Seafoods, Inc.,*
    339 F.3d 1020 (9th Cir. 2003) .............................................................. 9

**Rules**

Fed. R. Civ. P. 59(a) ............................................................................. 3

Fed. R. Civ. P. 59(a)(1)(A) .................................................................... 4

iv

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

**SER-9**

(10 of 70), Page 10 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 10 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12273    Page 7
of 28

## I.    INTRODUCTION

During the course of his four-day trial, Plaintiff testified he lost some sleep and felt "stressed" and "disconnected" when he was terminated from his position as a package car driver for UPS—a termination that occurred only after a company investigation concluded he sexually assaulted a female coworker. For that emotional "distress" the jury awarded him $39.6 *million*—more money than most Americans could earn in several lifetimes. That verdict cannot stand. The jury had no evidentiary basis for ruling for Plaintiff; and even if *some* damages were appropriate, the jury's unprecedented $39.6 million award "shocks … the conscience" and must be substantially reduced. *Brady v. Gebbie*, 859 F.2d 1543, 1558 (9th Cir. 1988).

The cause of the jury's unprecedented award is not hard to discern; Plaintiff's counsel flagrantly and repeatedly violated the Court's motion in limine orders, riling up the jury through emotional appeals based on evidence the Court had previously (and correctly) excluded. The Court warned Plaintiff's counsel repeatedly, but he persisted. This blatant misconduct, coupled with the Court's decision not to instruct the jury on one of UPS's key defenses and newly discovered evidence of serious witness misconduct, also warrants a new trial to prevent "a miscarriage of justice." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999).

***First***, the verdict is "contrary to the clear weight of the evidence." *Id.* Plaintiff alleges he was terminated "in retaliation for [engaging in] a protected activity," but as the Court properly held in vacating the punitive damages, there is "no evidence" of this. ECF 265 at 32. Instead, the evidence at trial showed that Plaintiff was terminated because an investigation confirmed credible allegations of sexual assault. *Id.* The evidence also showed that Plaintiff was not mistreated or harassed in retaliation for filing grievances and an EEOC complaint; Plaintiff was treated just like every other similarly situated employee. Because the evidence simply cannot

---

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR (CASE NO. 1:22-cv-03149-TOR)

**SER-10**

(11 of 70), Page 11 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 11 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12274    Page 8
of 28

1    support the verdict, the Court should vacate the award and order a new trial.

2    **Second**, the jury's "grossly excessive or monstrous" compensatory damages

3    award is not "sustainable by the probative evidence," so the Court should "not

4    hesitate to order a remission of the excess … or, in the alternative, a new trial." *L.A.*

5    *Mem. Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1360, 1366 (9th

6    Cir. 1986).    Plaintiff's wife's testimony that he "wouldn't even sleep" and felt

7    "disconnected" as a result of alleged retaliation at work (Trial Tr., Day 2, at 348:24;

8    483:16) is far too thin a reed for *any* substantial damages award and cannot possibly

9    support a $39.6 *million* award.  This staggering award "far exceeds the amounts that

10   Washington courts have upheld in similar cases" (*Kingston v. Int'l Bus. Machines*

11   *Corp.*, 2022 WL 3031590, at *2 (9th Cir. Aug. 1, 2022)), and it exceeds the awards

12   upheld in comparable single-plaintiff wrongful termination lawsuits by several

13   orders of magnitude.  This Court's duty in such a situation is to order a new trial, or,

14   at minimum, remit the award to between $30,000 and $250,000—the amounts

15   awarded to similarly situated plaintiffs in other cases.

16   **Third**, the Court also should grant a new trial based on Plaintiff's counsel's

17   repeated and egregious misconduct during the trial.  The jury's exorbitant damages

18   award almost certainly reflects the fact that Plaintiff's counsel repeatedly and

19   flagrantly violated the Court's prior motion in limine orders at trial and put before

20   the jury evidence and arguments the Court had held were irrelevant and unfairly

21   prejudicial to UPS.  Plaintiff's counsel repeatedly made racially charged allegations

22   before the jury, even though the Court previously granted summary judgment on

23   Plaintiff's racial discrimination and harassment claims, and the comments had no

24   relevance to Plaintiff's remaining retaliation claims.  And Plaintiff's counsel made

25   repeated insinuations about UPS's supposed wealth, even though the Court excluded

26   any such evidence *unless and until* the jury found UPS liable for punitive damages.

2
DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

**SER-11**

**Fourth**, a new trial is warranted based on the Court's determination not to instruct the jury on the Washington Law Against Discrimination's ("WLAD") same-decision defense, which permits a defendant to "avoid … liability" if it "prove[s] by clear and convincing evidence that it would have reached the same decision" to fire Plaintiff "even if … retaliation had not played a role." *Haley v. Pierce Cty.*, 2013 WL 544017, at *18 (Wash. App. Feb. 13, 2013). This instruction could have provided UPS a complete defense on Plaintiff's WLAD claim, as the evidence at trial showed UPS terminated Plaintiff because he sexually assaulted a coworker.

Each of these errors, individually and cumulatively, deprived UPS of a fair trial. The only way to correct this violation of UPS's fundamental rights is to vacate the jury's verdict and order a new trial, or at least grant a significant remittitur. *See* Fed. R. Civ. P. 59(a), (e).

Alternatively, this Court should grant limited discovery into whether Plaintiff's witnesses solicited and committed perjury, and hold open UPS's motion for a new trial pending the results of this limited post-trial discovery. After trial, UPS discovered evidence that Derek Tamez, one of Plaintiff's deposition witnesses, told other witnesses that "if we lie, we win." Summerville Decl. ¶ 7. If proven true, this previously undiscovered (and undiscoverable) evidence "would likely have changed the outcome of the case," as the jury would have heard that Plaintiff's witness solicited perjury with the implicit promise of a payout. *Defs. of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000). Evidence that Tamez intended to "lie" may have changed the Court's decision to exclude the testimony of Vanessa Sanchez and Armando Anaya, both of whom would have testified that they witnessed Plaintiff grab Linda Hernandez. That additional testimony supporting UPS would have changed the course of the entire trial and warrants further exploration and development through limited post-trial discovery.

---

3

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

(13 of 70), Page 13 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 13 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12276    Page 10
of 28

## II.    LEGAL STANDARD

A court may order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Even if "the verdict is supported by substantial evidence," the Court may grant a new trial "if the verdict is contrary to the *clear weight* of the evidence …." *4.0 Acres of Land*, 175 F.3d at 1139 (emphasis added) (cleaned up). Importantly, the Court on a Rule 59 motion is "***not*** required to view the evidence in the light most favorable to the verdict." *Morris v. W. Hayden Estates First Addition Homeowners Ass'n*, 104 F.4th 1128, 1152 (9th Cir. 2024) (emphasis added).

Attorney misconduct is also grounds for a new trial if "the jury was influenced by passion and prejudice in reaching its verdict." *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995). "[R]emittitur is an appropriate method of reducing an excessive verdict." *Watec Co. v. Liu*, 403 F.3d 645, 655 (9th Cir. 2005). And it is "clear that erroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). Additionally, a "new trial is justified … to reflect on new evidence not available at the time of trial." *Lewis v. Festo Corp.*, 182 F.3d 926, at *4 (9th Cir. 1999).

Even if one error "standing alone may not be prejudicial," "errors in a civil trial must be considered 'cumulatively'" and not "in isolation," because "the combined effect of multiple errors may suffice to warrant a new trial." *Sidibe v. Sutter Health*, 103 F.4th 675, 688 (9th Cir. 2024) (quotation marks omitted).

## III.    ARGUMENT

### A.    The Jury's Verdict Is Contrary to the Clear Weight of the Evidence and Should Be Vacated in Its Entirely

Each of Plaintiff's claims requires a "causal link" between the alleged

---

4

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

protected activity and the adverse employment action. *See* ECF 200 at 24–25. But the clear weight of the evidence shows that much of the conduct Plaintiff complained of at trial did not result in any adverse employment action, and that the only adverse employment action he suffered (his termination) was a result of an investigation that confirmed a credible accusation of sexual assault. *Id.* at 24. As the Court has already determined in vacating punitive damages, "no evidence was ever offered" that the investigation leading to Plaintiff's termination began as "retaliation for a protected activity." ECF 265 at 32. That requires vacatur of the judgment and a new trial.

Plaintiff presented trial testimony that after he "developed an acrimonious relationship" with Loomis and Fromherz, they took "active steps to make his job more difficult than other drivers, including other white drivers." ECF 265 at 3–4. Plaintiff asserted he was assigned to a "notorious" route and given a "faulty" truck. *Id.* at 4. But these assignments were not the result of retaliatory animus. As Plaintiff "acknowledged in his transfer form, he had no seniority to bid on [more desirable] routes and thus was left with a less desirable assignment" known as the "mall route." *Id.* And the "faulty" truck was "associated with the mall route," not with Plaintiff himself. *Id.* at 4; Trial Tr., Day 3, at 625:8–16. While Plaintiff also complained that Loomis and Fromherz allegedly "overload[ed] his route," Labor Manager Karl Leyert's investigation showed Plaintiff "was not being treated differently than other drivers," and "the union business agent, essentially Plaintiff's advocate," also "agreed" Plaintiff's "claims of retaliation were unsubstantiated." ECF 265 at 13–14.

Much of the other conduct Plaintiff complained of did not, as a matter of law, constitute an "adverse employment action" sufficient to support liability for a Section 1981 or WLAD claim. For instance, Plaintiff claimed that after he picked up packages from Old Navy in 2020, Loomis allegedly "required Plaintiff to change

5

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

SER-14

his pick-up piece count from 3,200 pieces to 100 bags," so Plaintiff would not receive a bonus. ECF 265 at 9. Plaintiff alleged that "a white driver, Mike Summerville, … was not required to change his pickup count." *Id.* at 10. But Labor Manager Lashawn Butler investigated the incident and determined that "Loomis was correct in requiring Plaintiff to change his pick-up from individual pieces to bags." ECF 265 at 11. Summerville "also did not receive a bonus for … packages picked up from Old Navy." *Id.* Plaintiff was treated identically to his white coworker (no one got a bonus), so UPS did not take an adverse employment action against him. Plaintiff also filed grievances regarding UPS's overtime policy, alleging he was not timely "provided the overtime pay owed to him." *Id.* at 15. He ultimately "was paid all overtime wages and related penalties." *Id.* at 16.

As to the only adverse employment action here—Plaintiff's termination—the clear weight of the evidence showed that it had nothing to do with his prior complaints but was instead completely justified by the results of an investigation that confirmed a credible allegation that Plaintiff had sexually assaulted a female coworker, Linda Hernandez. While walking on a raised platform, Plaintiff undisputedly touched Hernandez on her hip. Plaintiff claims that he "tripped" and "reached out to steady himself" by grabbing Hernandez's hip. ECF 265 at 16. But that is not what the investigation determined. The investigation uncovered evidence that when Plaintiff touched Hernandez, he said "something like 'I have got to go one-on-one with you.'" *Id.* at 19. Plaintiff later "nonchalantly" told a coworker that "he had put his hand on Hernandez and that she was upset he touched her." *Id.*

Leyert's investigation "followed standard procedure" and "relie[d] on … a neutral third-party investigator," UPS Security Supervisor Ryan Wiedenmeyer. *Id.* at 29–30. "[N]othing suggestive passed between Leyert and Wiedenmeyer," and although Leyert pre-drafted a termination letter, this "was a contingency in case it

6

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

SER-15

(16 of 70), Page 16 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 16 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12279    Page 13
of 28

was needed in the ten days required to render a decision." *Id.* at 30. "Leyert considered the facts as presented in the investigation report and simply did not believe Plaintiff's version of events." *Id.* at 30–31.

In vacating the punitive damages award, the Court concluded that "based on the evidence presented at trial," Leyert did not "harbor[] malicious or reckless indifference to Plaintiff's federally protected rights." ECF 265 at 31. As the Court properly held, there is no causal link whatsoever between his statutorily protected activity and his termination (*see id.* at 32 (rejecting the cat's paw theory)), which is fatal to his WLAD, Section 1981, and wrongful termination claims. Put simply, Plaintiff's ultimate termination had nothing to do with his prior grievances and everything to do with his sexual assault of another employee.

Applying the Rule 59 standard in similar cases, courts have determined that the jury's verdict was against the clear weight of evidence. In *Anders v. Waste Management of Wisconsin*, 463 F.3d 670 (7th Cir. 2006), a black employee was terminated after attempting to assault his manager. He was hired by a competitor, which was then acquired by his original employer. The original employer refused to hire him, which the plaintiff claimed was because "he had filed a complaint with the Equal Employment Opportunity Commission." *Id.* at 678. The court determined that plaintiff "ha[d] not pointed to any direct evidence of retaliation" because he "ha[d] [not] shown that after filing the charge, only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse action." *Id.*; *see also Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Likewise, Plaintiff here did not demonstrate that "only he … was subjected to an adverse employment action." As discussed above, his grievance about delayed overtime pay was one of "over 2,000" similar grievances, many of which resulted in "penalty" payments to drivers (*see* Trial Tr., Day 3, at 837:4-12), and a similarly

---

7

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

**SER-16**

(17 of 70), Page 17 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 17 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12280    Page 14
of 28

situated white driver also did not receive a bonus after his package count was changed.

The only adverse employment action Plaintiff suffered was his termination, and he did not show that action was in retaliation for his EEOC and internal complaints. The verdict is against the clear weight of the evidence, and the Court should order a new trial. ECF 265 at 32.

**B.    The Compensatory Damages Award Is Unsupported by Evidence and Should Be Vacated or Substantially Reduced.**

The Court should grant a new trial—or at minimum, order a substantial remittitur—because the jury's $39.6 million emotional distress award shocks the conscience. Under Washington law, compensatory damages cannot be "so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous." *Bunch v. King Cty. Dep't of Youth Servs.*, 116 P.3d 381, 389 (Wash. 2005) (en banc). Damages are "shockingly excessive" and must be reduced after trial when they "far exceed[] the amounts that Washington courts have upheld in similar cases." *Kingston*, 2022 WL 3031590, at *2 (remitting a $6 million award for noneconomic damages). Federal law likewise recognizes that when a jury awards damages that are "grossly excessive," "monstrous," or "shocking to the conscience," a district court may order a new trial. *Brady*, 859 F.2d at 1557.

Washington courts have never upheld anything close to $39.6 million for a violation of the WLAD or for a common-law wrongful discharge. In 2022, the Ninth Circuit noted that, "so far as [it has] been able to determine, no Washington court has upheld an award of greater than $1.5 million in non-economic damages in a wrongful-termination case." *Kingston*, 2022 WL 30315, at *2. The jury's verdict here is nearly *23 times* larger than any previously upheld award in Washington.

Courts applying Washington law have remitted much smaller awards as

8

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

"unreasonable and outrageous." For instance, in *Hill v. GTE Directories Sales Corp.*, 856 P.2d 746, 748 (Wash. App. 1993), a jury awarded $410,000 in noneconomic damages to a sex-discrimination plaintiff. The trial court reduced that award to $125,000 because the only evidence supporting noneconomic damages was plaintiff's testimony that she was "prescribed Xanax to settle her nerves" and "saw a psychologist twice." *Id.* at 751. The Washington Court of Appeals affirmed because this "meager evidence … clearly indicate[d] passion or prejudice" by the jury. *Id.* And in *Johnson v. Albertsons LLC*, 2020 WL 3604107, at *1 (W.D. Wash July 2, 2020), a jury awarded $750,000 in emotional distress damages to a plaintiff fired in violation of the WLAD. The court remitted the award to $200,000 because it was "grossly excessive and outside the range of the evidence," and the plaintiff presented "only a 'garden variety' emotional distress claim." *Id.* at *5. The primary evidence of emotional distress was the plaintiff's testimony that "she was humiliated and suffered a loss of self-esteem." *Id.*

The jury's award is also shockingly excessive for a Section 1981 case. In *Flores v. City of Westminister*, 873 F.3d 739, 745 (9th Cir. 2017), plaintiffs were denied a beneficial "special assignment[ ]" on the basis of their race. The jury awarded between $42,000 and $218,000 in compensatory damages from each defendant. In *Swinton v. Potomac Corp.*, 270 F.3d 794, 799 (9th Cir. 2001), an employee quit his job after severe racial harassment; the Ninth Circuit affirmed an award of just "$30,000 for emotional distress." In *Pavon v. Swift Transportation Co.*, 192 F.3d 902 (9th Cir. 1999), an employee was subjected to racial slurs before his termination, and the Ninth Circuit affirmed an award of "$250,000 in noneconomic damages." *Id.* at 906. In *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1024, 1039–40 (9th Cir. 2003), the Ninth Circuit upheld an award of $360,000 in compensatory damages to an employee who was "retaliated against and

9

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

**SER-18**

(19 of 70), Page 19 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 19 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12282    Page 16
of 28

ultimately fired due to his Chinese ethnicity." And in *Diaz v. Tesla, Inc.*, 598 F. Supp. 3d 809, 816 (N.D. Cal. 2022), a prevailing Section 1981 plaintiff's workplace "was saturated with racism. [He] faced frequent racial abuse, including the N-word and other slurs. Other employees harassed him." A jury awarded $6.9 million, and the court remitted the award to $1.5 million, reasoning that the Ninth Circuit has almost always limited emotional distress damages in Section 1981 wrongful-termination cases to $1.5 million. *Id.* at 838; *see also Arizona v. ASARCO LLC*, 773 F.3d 1050, 1053 (9th Cir. 2014) (en banc) (affirming an award of $1 in nominal damages to a Title VII plaintiff who was "constructively discharged" after being sexually harassed).

The jury's award here dwarfs even those awards in discrimination cases where plaintiffs suffered *physical* harm. In *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 163 (2d Cir. 2014), the court affirmed a compensatory damages award of $1.32 million where the plaintiff was hospitalized after "years of grotesque psychological abuse." The *Hill* plaintiff presented evidence that she required medical care, but she received only $125,000 in damages. 856 P.2d at 748. The plaintiff in *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 513 (9th Cir. 2000), was awarded $1 million despite suffering "rashes, stomach problems, and other symptoms." And in *Harper v. City of Los Angeles*, 533 F.3d 1010, 1029 (9th Cir. 2008) (applying analogous California law), wrongfully terminated plaintiffs were awarded $5 million each (including for lost income and harm to reputation) where one "developed high blood pressure and intestinal problems," another "became suicidal," and a third "gained 100 pounds [and] was hospitalized."

Plaintiff, in contrast, has established nothing more than "garden variety" emotional distress. He testified he "was just disconnected," and his wife testified that Plaintiff lost sleep and felt stressed. Trial Tr., Day 2, at 348:19–349:11, 482:13–

10

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

484:4.  Plaintiff did not present "objective" evidence of emotional distress such as illness or testimony from a healthcare provider, and he admitted he had not sought therapy.  Plaintiff is thus entitled to, at most, a modest award.  *Passantino*, 212 F.3d at 513; *Kingston*, 2022 WL 3031590, at *2 (ordering remittitur or a new trial based on "shockingly excessive" $6 million verdict, as plaintiff's "distress does not appear to have been significantly greater than what anyone might suffer from being fired"); *Bunch*, 116 P.3d at 389 (affirming $260,000 award where plaintiff "was depressed and angry" but "never consulted a healthcare professional").

"[C]ompensatory damages are measured by the harm the defendant has caused the plaintiff," and their proper measure is that which will "make good or replace the loss caused by the injury." *Bayer v. Nieman Marcus Grp., Inc.*, 861 F.3d 853, 872 (9th Cir. 2017) (quotation marks omitted).  Plaintiff does not need $39.6 million—more than 300 times his annual income—to compensate him for lost sleep, stress, and feelings of disconnection.  The jury's award does far more than "replace" any losses suffered by Plaintiff; it places Plaintiff in a vastly superior position than he would have been had he not been terminated.  Allowing a wrongfully terminated plaintiff to "essentially obtain his salary twice over" is an "undue windfall." *Teutscher v. Woodson*, 835 F.3d 936, 954 (9th Cir. 2016).  The jury awarded Plaintiff *hundreds* of times his annual income, even though he has been operating a successful business selling prize-winning barbecue sauce.  Trial Tr., Day 2, at 375:4-376:3.  The jury's excessive damages award therefore warrants a new trial.

Because a "court may need to order remittitur to correct excessive awards for emotional distress" (*Bell v. Williams*, 108 F.4th 809, 831 (9th Cir. 2024)), the Court should at a minimum reduce the compensatory damages award to somewhere between $30,000 and $250,000, which represents the range of jury awards in comparable cases.  *Bell* collected a series of appellate decisions ordering remittiturs

---

11

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

SER-20

(21 of 70), Page 21 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 21 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12284    Page 18
of 28

of awards as low as $100,000 to prevent compensatory awards from "go[ing] beyond their compensatory function and turn[ing] punitive." *Id.*; *see also Swinton*, 270 F.3d at 799 (affirming an award $30,000); *Pavon*, 192 F.3d at 906 (affirming an award of $250,000); *Paul v. Asbury Auto. Grp., LLC*, 2009 WL 188592, at *9 (D. Or. Jan. 23, 2009) (ordering remittitur of $1.9 million and $2.1 million emotional distress damage awards to $150,000). Applying this body of caselaw here requires a substantial reduction in the emotional distress damages the jury awarded.

## C.    A New Trial Is Warranted Because Plaintiff's Counsel Repeatedly Violated This Court's Motion in Limine Orders

The utter lack of evidence supporting the jury's unprecedented verdict might prompt the question: How did the jury get it so wrong? The Court need look no further than Plaintiff's counsel's egregious violations of this Court's motion in limine orders, which inflamed the jury's passions and enticed it to base its decision not on a reasonable review of the evidence but on prejudicial attacks that this Court specifically excluded as time-barred and irrelevant.

"Where attorneys have tried to get in the 'back-door' what they could not get into evidence, courts have protected against harm to the opposing party by granting a new trial." *Cones v. Cty. of L.A.*, 2016 WL 7438817, at *8 (C.D. Cal. Sept. 28, 2016). And a "new trial is warranted on the ground of attorney misconduct during the trial where the flavor of misconduct ... sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Anheuser-Busch*, 69 F.3d at 346 (quotation marks omitted). Both grounds support a new trial here.

### 1.    Racially Charged Comments Regarding Time-Barred Claims

This Court excluded two categories of evidence that were highly prejudicial and irrelevant to Plaintiff's claims. The Court ordered that Plaintiff could not

12
DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

SER-21

(22 of 70), Page 22 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 22 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12285    Page 19
of 28

introduce evidence of discrete acts that occurred outside the limitations period, including allegations that a white supervisor referred to Plaintiff as "boy." ECF 94 at 20, 37 n.5; ECF No. 200 at 22–25, 29–30. And because the Court granted summary judgment on Plaintiff's discrimination and harassment claims, and UPS stipulated that Plaintiff "engaged in protected activity," the Court ruled that, "[t]o the extent that Plaintiff intends to offer other evidence or testimony of racial discrimination or harassment into the trial record, he must be prepared to specifically articulate how those instances pertain to the remaining two elements of his retaliation claim and/or wrongful termination claim." ECF 200 at 25–26, 29.

Plaintiff's counsel repeatedly and brazenly flouted these rulings. Starting with opening statements, Plaintiff's counsel not only mentioned the "boy" comments, but also displayed the EEOC charge and specifically enlarged and highlighted the very same comments that the Court had already held were time-barred. Trial Tr., Day 1, at 81:22–82:2 (stating Plaintiff "reported that he was regularly being called 'boy' in a racially derogatory manner by his white supervisor" and "that he had filed a complaint about being called 'boy' as racially offensive and discriminatory"). Plaintiff's counsel also elicited witness testimony about the "boy" comments. *Id.* at 231:25–232:2. UPS's counsel objected, and the Court sustained the objection, but Plaintiff's counsel continued to elicit testimony about the "boy" comments and other examples of alleged racial discrimination or harassment irrelevant to the retaliation claim. *Id.* at 232:3–13; Trial Tr., Day 2, at 329:24–330:6, 397:6–12. During a recess, UPS's counsel expressed concern that UPS was prejudiced by "several deliberate violations of the motion in limine rulings by Plaintiff's counsel, including specifically attempting to elicit testimony that there was race discrimination against black drivers outside of the context of the EEOC charge" and "testimony that was clearly before the limitations period." Trial Tr., Day 2, at 516:19–517:4. The Court

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

(23 of 70), Page 23 of 70     Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 23 of 70
Case 1:22-cv-03149-TOR     ECF No. 271     filed 12/09/24     PageID.12286     Page 20
of 28

1  agreed and warned Plaintiff's counsel to "toe the line." *Id.* at 517:19.

2       But Plaintiff's counsel ignored that warning. He again elicited testimony

3  regarding allegations the Court specifically held were time-barred. Trial Tr., Day 3,

4  at 670:1–10. And during his direct examination of Supervisor Matt Fromherz, the

5  Court sustained *six* consecutive objections to Plaintiff's counsel's introduction of

6  prejudicial and irrelevant information about alleged harassment the Court previously

7  excluded. *Id.* at 687:18–690:13. Then, while cross-examining a different witness,

8  Plaintiff's counsel monologued for the jury his own views and arguments regarding

9  Fromherz's alleged harassment. *Id.* at 806:5–807:12 ("The question relates to the

10 fact that there's been overwhelming evidence of Matthew Fromherz having a six-

11 year pattern of retaliation, workplace bullying, harassment and the company

12 tolerating it."). To top it all off, during his closing statement, Plaintiff's counsel

13 reiterated to the jury that Plaintiff "had been called 'boy' in a racially derogatory

14 manner by his white supervisor repeatedly." Trial Tr., Day 4, at 940:15–17.

15      The Ninth Circuit confirmed in *Anheuser-Busch* that these types of tactics are

16 inappropriate and warrant a new trial. There, the plaintiff "presented at the trial,

17 over [the defendant's] repeated objections, evidence" that the district court had

18 excluded in prior in limine rulings. 69 F.3d at 346. "Even after [the defendant's]

19 objection was made and sustained," the plaintiff again "introduced the inadmissible

20 evidence in his cross-examination" of the defendant's employee. *Id.* at 346–47.

21 Plaintiff's counsel "repeatedly and impermissibly elicited testimony and made

22 reference to matters previously ruled inadmissible," which left no doubt he did so

23 "with the sole purpose of bringing to the jury something it should not have heard."

24 *Id.* at 347. He also "in his closing argument … used the inadmissible evidence in an

25 inflammatory manner." *Id.* The Ninth Circuit recognized that such behavior was

26 prejudicial because it "left the jury with the unrebutted impression" that the excluded

---

14

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

(24 of 70), Page 24 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 24 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12287    Page 21
of 28

evidence was true and relevant. *Id.* It thus held that a new trial was necessary. *Id.*

In *Chen v. City of Medina*, 2013 WL 4511411, at *1 (W.D. Wash. Aug. 23, 2013), the court excluded evidence of discriminatory comments that "could not be imputed" to the defendants. *Id.* Plaintiff's counsel, however, "violated these and other rulings in limine"—"beginning with her opening statement"—and "the jury was improperly exposed to evidence of racial animus that [could] not, as a matter of law, be used to hold [the defendants] liable for discrimination." *Id.* Defense counsel "objected as soon as they could, but the bell had already rung." *Id.* at *17. "By continually intimating to the jury that racial animus on the part of defendants was demonstrated by the offensive conduct of individuals … disconnected from defendants by the passage of time," plaintiff's counsel provoked a windfall. *Id.*

Plaintiff's counsel's defiance of this Court's motion in limine orders is indistinguishable from *Anheuser-Busch* and *Chen*. In opening statements, Plaintiff's counsel exposed the jury to evidence of alleged discrimination that could not "as a matter of law, be used to hold [UPS] liable" for retaliation. *Chen*, 2013 WL 4511411, at *1. Plaintiff's lead counsel repeatedly introduced inadmissible evidence, and he ignored six consecutive sustained objections. Trial Tr., Day 3, at 687:18–690:13; *see also Cones*, 2016 WL 7438817, at *9 ("five instances" enough to constitute "repeated improper questioning that [made] this case analogous to *Anaheuser-Busch* [sic]" and warranted a new trial). The "boy" comments and other evidence of alleged discrimination and harassment that Plaintiff's counsel "paraded before the jury" were likely to inflame the passions of the jury and "were excluded precisely because [UPS] cannot be held liable on the basis of such comments." *Chen*, 2013 WL 451411, at *17; *see also, e.g.*, *Brown v. Sugarhouse HSP Gaming, L.P.*, 2024 WL 4350322, at *16 (E.D. Pa. Sept. 27, 2024); *Hawkins v. Groot Indus., Inc.*, 2003 WL 1720069, at *3 (N.D. Ill. Mar. 31, 2003). And Plaintiff's counsel

15

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

SER-24

reiterated this inadmissible evidence during closing arguments.  Trial Tr., Day 4, at
940:15–17; *see also id.* at 951:6–9 ("[T]here is no racist trope older in this world
than the idea that large black men are coming for our women.").  The misconduct
during closing was particularly prejudicial because it "allow[ed] counsel to bring
facts before the jury at a time when [UPS] no longer ha[d] the opportunity to present
explanatory evidence" and left "the jury with a final impression" of misconduct.
*Hern v. Intermedics, Inc.*, 2000 WL 127123, at *3–5 (9th Cir. Feb. 3, 2000); *see also*
*Cones*, 2016 WL 748817, at *9 (similar).

"Courts have recognized that such inflammatory statements can provide a
basis for a new trial, particularly when a one-sided jury verdict suggests that the jury
was influenced by passion or prejudice."  *Cones*, 2016 WL 7438817, at *8.  The
unprecedented damages award here leaves no room for any other conclusion than
that the jury was inflamed by Plaintiff's counsel's repeated misconduct.

### 2.     UPS's Financial Resources, Size, and Power

This Court also excluded "evidence of Defendant's financial resources, size,
or power during its case in chief," as "[s]uch evidence could be unduly prejudicial
or result in a confusion of the issues."  ECF 200 at 32.  Such evidence or argument
would be admissible only if "the jury finds that [UPS's] conduct warrants punitive
damages"—not before.  *Id.*  Plaintiff's counsel violated this ruling as well.

The day after this Court warned Plaintiff's counsel to "toe the line," Plaintiff's
counsel harped on UPS's financial resources, size, and power.  Trial Tr., Day 3, at
589:24–25, 590:9–591:16 (referring to UPS as a "90-billion-dollar-a-year company"
with "90 billion a year in annual revenue," "9 billion in annual profits," and "6.1
billion in liquid capital").  UPS's counsel objected each time, but the jury had already
been exposed to Plaintiff's counsel's prejudicial comments.  And during his closing
statement, Plaintiff's counsel candidly asked the jury to "stand up to" UPS, because

16

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

"[t]his is the only place on earth where nine regular citizens can take a multinational corporation and bring it to its knees and make them listen." Trial Tr., Day 4, at 957:2–8. The only way "to get the attention of a company like UPS," he continued, is to award punitive damages commensurate with its size. *Id.* at 957:12–17.

*Anheuser-Busch* again controls and requires a new trial: Plaintiff's counsel "presented at the trial, over [UPS's] repeated objections, evidence" regarding UPS's wealth and power (69 F.3d at 346–47), which this Court had excluded in its motion in limine rulings as "unduly prejudicial," likely to "result in a confusion of the issue," and irrelevant prior to a finding of punitive damages (ECF 200 at 32). And that's exactly what happened at trial. The jury awarded $198 *million* in punitive damages—even though that was not "reasonable" based on "the evidence presented at trial" (ECF No. 265 at 34)—because Plaintiff's counsel told them that was the only way "to get the attention of a company like UPS" that makes "90 billion a year in annual revenue." Trial Tr., Day 3, at 590:9–10; Trial Tr., Day 4, at 957:12–17. In addition to Plaintiff's counsel's repeated violations of this Court's motion in limine orders, his references to a defendant's "size" and the "financial disparity" between the parties are "obviously an appeal to passion and prejudice" that independently warrants a new trial. *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756–57 (6th Cir. 1980); *see also Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3rd Cir. 1978); *Garcia v. Sam Tanksley Trucking, Inc.*, 708 F.2d 519, 522 (10th Cir. 1983). A new trial is necessary.

**D.   A New Trial Is Warranted Because This Court Did Not Instruct the Jury on the WLAD's Same-Decision Defense**

UPS requested that this Court instruct the jury on the "same decision" affirmative defense under the WLAD. ECF No. 187 at 5. Pursuant to the same-decision defense, UPS can "avoid … liability" if it "prove[s] by clear and convincing

17

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL,
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

**SER-26**

(27 of 70), Page 27 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 27 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12290    Page 24
of 28

1    evidence that it would have reached the same decision" to fire Plaintiff "even if …
2    retaliation had not played a role." *Haley*, 2013 WL 544017, at *18. The defense
3    originated in *Davis v. Department of Labor & Industry*, 615 P.2d 1279 (Wash. 1980),
4    which held that a prevailing discrimination plaintiff was not entitled to backpay "on
5    the ground that even absent discrimination, she would not have been promoted." *Id.*
6    at 1280. "The *Davis* court's version of the same-decision defense, which no
7    Washington court has overruled or questioned, remains the law in Washington."
8    *Conti v. Corp. Servs. Grp., Inc.*, 30 F. Supp. 3d 1051, 1066 (W.D. Wash. 2014).
9    UPS's requested instruction mirrored these cases: "UPS has the burden of proving
10   by clear and convincing evidence that UPS would have made the same adverse
11   employment action towards Plaintiff even if retaliation had played no role in UPS's
12   adverse employment action." ECF No. 187 at 19.

13        Had the jury been instructed on the existence and elements of the same-
14   decision defense, it could have easily concluded that UPS would have terminated
15   Plaintiff regardless of the alleged discrimination. The evidence presented at trial
16   showed that Supervisor Ryan Wiedenmeyer investigated the sexual-assault
17   allegations against Plaintiff and concluded he assaulted a fellow employee. *See*, *e.g.*,
18   Trial Tr., Day 1, at 171:22–172:2, 195:4–17. UPS then terminated Plaintiff after this
19   investigation was complete. A properly instructed jury thus could have concluded
20   that Plaintiff would have been terminated for sexual assault regardless of any alleged
21   retaliation. And although the same-decision defense is not available under Section
22   1981, the jury did not specify how much of its compensatory damages award was
23   based on the state-law claims versus the federal claim. The error therefore was not
24   harmless, and a new trial is warranted. *See Counts v. Burlington N. R. Co.*, 952 F.2d
25   1136, 1138 (9th Cir. 1991).
26

---
DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

(28 of 70), Page 28 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 28 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12291    Page 25
of 28

**E.    If the Court Does Not Order a New Trial, It Should Order Limited Discovery into Newly Discovered Evidence of Perjury**

If this Court declines to order a new trial or remit the compensatory damages award, it should grant limited post-trial discovery into whether Plaintiff's witnesses committed perjury, and hold open UPS's motion for a new trial pending the results of this limited post-trial discovery.

After the trial, UPS discovered evidence that Derek Tamez, a UPS employee who provided deposition testimony on Plaintiff's behalf (ECF No. 52-2), told other employees at Yakima that, "if we lie, we win."  Summerville Decl. ¶ 7.  In other words, one of Plaintiff's witnesses stated his intent to commit perjury, encouraged other witnesses to give false testimony, and may have given false testimony during his own deposition.  Plaintiff may have also promised to pay $2 million to one of his witnesses (*id.* ¶ 8)—a large sum that suggests compensation for false testimony.

If proven true, this new evidence would warrant a new trial.  This evidence could not have been uncovered earlier and would have changed the outcome of the trial.  *See Bernal*, 204 F.3d at 929; *see also Viskase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1324 (Fed. Cir. 2001) (affirming the grant of a new trial where "post-trial discovery" revealed perjury); *Zest Labs, Inc. v. Walmart Inc.* 2023 WL 8878223, at *1 (E.D. Ark. Dec. 22, 2023) (granting a Rule 59 motion after post-trial discovery revealed plaintiff's failure to disclose material evidence).  UPS could not have discovered this evidence prior to trial because Tamez had not yet made his statement.  Had Tamez made this statement before trial, UPS would have called Tamez, Maldonado, Anaya, and Sauve to the stand to elicit testimony about these incidents, and UPS would have questioned Anderson while he was on the stand.  And the jury would have heard that Plaintiff's deposition witness enticed other UPS employees to lie under oath, with the implicit promise of a payout if Plaintiff won.

---

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

(29 of 70), Page 29 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 29 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12292    Page 26
of 28

1    Moreover, the Court may have allowed UPS to present testimony from
2    Armando Anaya and Vanessa Sanchez, both of whom would have testified that they
3    witnessed Plaintiff assault Linda Hernandez.    The Court had conditioned the
4    admissibility of these witnesses' testimonies on Plaintiff's decision to call Tamez,
5    because Anaya and Sanchez would have rebutted Tamez's testimony that UPS
6    continued to retaliate against Plaintiff in post-termination proceedings. ECF No.
7    200 at 6–8. Plaintiff decided not to call Tamez as a witness, so UPS was unable to
8    call Anaya and Sanchez. Had UPS known that Tamez intended to commit perjury,
9    UPS would have moved to exclude Tamez solely on that basis, instead of tying
10   Tamez's testimony to Anaya's and Sanchez's. ECF No. 152 at 5–6. The Court may
11   then have allowed UPS to present testimony from Anaya and Sanchez, which would
12   have corroborated UPS's non-retaliatory reason for firing Plaintiff.    And that
13   testimony would have gone unrebutted, as Tamez was the *only* witness who
14   corroborated Plaintiff's version of events at summary judgment. ECF No. 94 at 13,
15   40–41. There is a *substantial* likelihood that such evidence "would likely have
16   changed the outcome of the case"—to either a defense verdict, or at least a
17   dramatically lower amount of damages. *Bernal*, 204 F.3d at 929.

18   If the Court orders a new trial or remits the compensatory damages award,
19   post-trial discovery is unnecessary. But if the Court declines to grant UPS the relief
20   requested above, it should permit limited post-trial discovery to allow UPS to
21   develop this alternative ground for a new trial.

22   ### IV.    CONCLUSION

23   UPS respectfully requests that the Court order a new trial, or at least remit the
24   compensatory damages award to an amount no greater than $250,000. Alternatively,
25   UPS requests that this Court grant limited post-trial discovery into whether
26   Plaintiffs' witnesses solicited and committed perjury.

---

20

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

(30 of 70), Page 30 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 30 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12293    Page 27
of 28

1

2  Dated: December 9, 2024

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

By:  /s/ Florence Z. Mao
     Florence Z. Mao, WA #49973
     florence.mao@ogletreedeakins.com
     Elizabeth A. Falcone, Admitted Pro Hac Vice
     elizabeth.falcone@ogletreedeakins.com
     Michael D. Mitchell, Admitted Pro Hac Vice
     michael.mitchell@ogletreedeakins.com
     The KOIN Center
     222 SW Columbia Street, Suite 1500
     Portland, OR 97201
     Phone: 503-552-2140

     GIBSON, DUNN & CRUTCHER LLP
     THEANE EVANGELIS (pro hac vice)
     tevangelis@gibsondunn.com
     MADELEINE F. MCKENNA (pro hac vice)
     mmckenna@gibsondunn.com
     333 South Grand Avenue
     Los Angeles, CA  90071-3197
     Telephone:      213.229.7000
     Facsimile:      213.229.7520

     BLAINE H. EVANSON (pro hac vice)
     bevanson@gibsondunn.com
     MIN SOO KIM (pro hac vice)
     mkim@gibsondunn.com
     3161 Michelson Drive
     Irvine, CA  92612-4412
     Telephone:      949.451.3800
     Facsimile:      949.451.4220

     Attorneys for Defendant UNITED PARCEL
     SERVICE, INC.

21

DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR A NEW TRIAL.
AMENDMENT OF THE JUDGMENT, OR REMITTITUR, OR ALTERNATIVELY, FOR
LIMITED POST-TRIAL DISCOVERY (CASE NO. 1:22-cv-03149-TOR)

(31 of 70), Page 31 of 70    Case: 25-1724, 06/12/2025, DktEntry: 22.2, Page 31 of 70
Case 1:22-cv-03149-TOR    ECF No. 271    filed 12/09/24    PageID.12294    Page 28
of 28

## CERTIFICATE OF SERVICE

1

2       I hereby certify that on December 9, 2024, I electronically filed the foregoing

3   with the Clerk of the Court using the CM/ECF system, which will serve a copy of

4   this document upon all counsel of record.

5

6       Dated this 9th day of December, 2024

7                                   By:  */s/ Marin Rosenquist*
8                                       Marin Rosenquist, Practice Assistant
                                        marin.rosenquist@ogletreedeakins.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE - 1                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
(No. 1:22-cv-03149-TOR)                                        The KOIN Center
                                              222 SW Columbia Street, Suite 1500 | Portland, OR 97201
                                                  Phone: 503-552-2140 | Fax: 503-224-4518

1

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON – YAKIMA

8

9

10

11

12

13

TAHVIO GRATTON, an individual

            Plaintiff,

     v.

UNITED PARCEL SERVICE, INC., an
Ohio Corporation,

           Defendant.

No. 1:22-cv-03149-TOR

**FIRST AMENDED
COMPLAINT FOR DAMAGES**

**JURY TRIAL REQUESTED**

14

15

16

17

18

19

20

21

22

23

24

25

26

FIRST AMENDED COMPLAINT FOR DAMAGES
Page i

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

## I. NATURE OF THE ACTION

1.    This is an action for damages for declaratory judgment, equitable relief, and monetary damages, instituted to secure the protection of and to redress the deprivation of rights secured through the Washington Law Against Discrimination, RCW 49.60 et al. ("WLAD"), 42 U.S.C. § 1981 ("Section 1981"), and Washington's Tort of Wrongful Discharge in Violation of Public Policy.

2.    Plaintiff Tahvio Gratton ("Plaintiff" or "Mr. Gratton") is a former employee of Defendant United Parcel Service ("UPS"). During his employment, Mr. Gratton, a black man, was discriminated against and subjected to a hostile work environment based on his race and in retaliation for engaging in protected activity under Washington and Federal law. Mr. Gratton was discriminatorily and retaliatorily denied job opportunities and assignments because of his race and protected activity. Ultimately, he was unlawfully terminated by Defendant UPS in violation of the WLAD, Section 1981, and Washington common law. Plaintiff seeks monetary relief, including pecuniary and non-pecuniary damages, compensatory damages, and punitive damages to the fullest extent allowed by law.

## II. PARTIES, JURISDICTION, AND VENUE

3.    Plaintiff Tahvio Gratton is a former employee of Defendant. Plaintiff is a resident of Yakima, Washington.

4.    Defendant UPS is an Ohio Corporation that transacts business in the Eastern District of Washington.

5.    The Court has federal question jurisdiction under 28 U.S.C § 1331 for claims brought under 42 U.S.C. § 1981.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 1

SHISHIDO TAREN GOLDSWORTHY
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

6.      This Court has supplemental jurisdiction over Plaintiff's Washington law claims under 28 U.S.C. §1367.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's allegations occurred in the Eastern District of Washington, the subject employer is located in this District, and Defendant resides and/or does business in this District.

8.      At all relevant times, Defendant employed Plaintiff in the Eastern District of Washington. Defendant employs the requisite number of employees under the aforementioned statutes.

### III.    FACTUAL ALLEGATIONS

9.      Plaintiff reincorporates paragraphs 1 through 8.

10.     Plaintiff, Tahvio Gratton was employed by Defendant UPS as a Cover Driver and Delivery Driver from September 26, 2016 until his unlawful termination on October 19, 2021.

11.     In or around January 2018, Mr. Gratton transferred from Seattle UPS center to the Yakima UPS center.

12.      At the time that he transferred to UPS Yakima, Plaintiff had about one-and-a-half years of experience working as a Cover Driver.

13.     Plaintiff Gratton is African American.

14.     Immediately after beginning his work as a full-time Cover Driver in Yakima, UPS Managers treated Mr. Gratton differently from his white peers.

15.     On-Road Supervisor Matt Fromherz was short with him, ignored him, and spoke down to him, while being noticeably friendly towards white Drivers.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 2

SHISHIDO TAREN GOLDSWORTHY
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

16.     Supervisor Fromherz, along with Center Manager Erik Loomis, was in charge of scheduling drivers and assigning routes. He gave Mr. Gratton less opportunity to work than the other Cover Drivers.

17.     Plaintiff Gratton would arrive at the UPS Center on a daily basis to learn that he was "laid-off" for the day.

18.     In order of seniority, Drivers are "laid off" when there is not enough work for them to perform, such that the lowest ranking Drivers will be denied work and compensation during periods of shortage.

19.     Often Mr. Gratton was the only Cover Driver who was laid off. It soon became apparent that the Center Managers were singling out Mr. Gratton and laying him off intentionally, even when there were work opportunities for him.

20.     In February 2018, when another Driver specifically asked Mr. Gratton to cover his route, On-Road Supervisor Fromherz quickly interjected, "No, not today." Fromherz provided no reason for refusing to allow Mr. Gratton to cover the route that day.

21.     On or around February 26, 2018 Mr. Gratton met with On-Road Supervisor Fromherz and asked him why he had not been allowed to cover the route. Fromherz responded: "Because you didn't come and ask me like a man."

22.     Mr. Gratton opposed such treatment. He told Mr. Fromherz, "That is belittling and attacking of my character."

23.     Mr. Gratton reported this treatment, including being denied the driving route, to Center Manager Erik Loomis, who did not seem concerned and gave no true response.

24.     UPS was not compensating Mr. Gratton for forced lay-off, as required under the union rules. Plaintiff Gratton also learned that even Part-Time

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 3

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

**SER-35**

Cover Drivers were being given preference over him, in violation of the union rules regarding seniority.

25.     On April 19, 2018, Mr. Gratton filed a complaint regarding UPS laying him off without proper compensation.

26.     As a result of Mr. Gratton's complaint, the Center Managers were required to post a list revealing which drivers were working which routes each day.

27.     The list revealed that Plaintiff Gratton was the only driver who was actually not being allowed to work, and that the other drivers listed for lay off still got work.

28.     Mr. Gratton's complaints regarding racial harassment, discrimination and retaliation, resulted in further, ongoing retaliation.

29.     In Mr. Gratton's presence, On-Road Supervisor Matt Fromherz told other drivers that Mr. Gratton was the reason the list was up and that, "Now, you guys will be getting less days off," creating frustration by other drivers towards Mr. Gratton.

30.     On or about April 24, 2018, the Center Managers assigned Plaintiff Gratton a "ride along," in which a manager accompanies and observes a driver en route. Manager Sam O-Rourke, who rode along with Mr. Gratton, subjected him to racial harassment throughout the day by repeatedly referring to him as "Boy," among other disparaging remarks.

31.     Supervisor O'Rourke spent the day watching Mr. Gratton work, barking orders at him, and demeaning him based on his race.

32.     Mr. O'Rourke is white and younger than Mr. Gratton. Rather than referring to Mr. Gratton by name, he referred to him as "Boy" throughout the

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 4

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

day. For example, he said to Mr. Gratton, "Is this the hardest you've ever worked, Boy?" "Move faster, Boy, let's go!" "Boy, I told you to hurry!"

33.    Mr. O'Rourke also made offensive sports references, saying to Mr. Gratton, "Boy, why would I play you when I have a star running back?"

34.    When Mr. Gratton ran across the street to drop off a package, O'Rourke said, "There we go, Boy, that's what I like to see!"

35.    Early during the ride-along, Mr. Gratton openly opposed Mr. O'Rourke's racial harassment. He asked Mr. O'Rourke, "Why are you calling Boy? I'm not your Boy." Mr. O'Rourke said, "I'm from the South. That's how I talk." Mr. Gratton responded, "No black man in the South would be okay with you talking to him that way and I am not okay with it, so stop calling me that."

36.    Despite Mr. Gratton's open and direct opposition to such treatment, Mr. O'Rourke continued to call him "Boy" throughout the day and speak to him in a demeaning tone, even in front of customers.

37.    A Footlocker employee witnessed some of Mr. O'Rourke's conduct towards Tahvio Gratton that day, which she described as "shocking":

> It was about 10:00 AM or 11:00 AM when Tahvio came by, rang the bell and said "Hey. How's it going? Like he normally did when he began his delivery. The other man also cam inside the store and started talking to Tahvio in a very condescending tone.

> When Tahvio greeted me and asked how I was doing, the other man said, "Let's get going, boy, let's move." "I didn't tell you to talk, boy." He went on to call Tahvio "Boy" over and over again, while barking orders at him. Every time this man talked to Tavhio while in the Foot Locker store that day, he call him "boy." I was absolutely shocked.

.    .    .

> There was no reason for this supervisor to be critical of Tahvio's pace of work that day. Tahvio was very quickly bringing in full dollies of

SHISHIDO TAREN GOLDSWORTHY
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

boxes, as well as carrying some of the smaller boxes three at a time by hand. He finished the box delivery very quickly, as he always did. There was also absolutely no reason to keep referring to Tahvio as "boy." I felt certain that this supervisor was talking to Tahvio this way because he is black.

· · ·

At the end of Tahvio's delivery that day, I was double-counting all of the boxes as I always did before singing off. During that moment of downtime, Tahvio and I again exchanged a few words. His supervisor barked, "I told you, boy, you're not supposed to talk!"

At this point, I really couldn't take anymore how condescending and offensive this supervisor was towards Tahvio. As the supervisor was signing the delivery paperwork, I told him, "I hope you don't get your boots too dirty or work too hard." He responded, "Oh trust me, I won't. I got this boy working."

38.     Upon returning to the Yakima UPS Center that day, Mr. Gratton went directly to Center Manager Erik Loomis's office and informed him of Mr. O'Rourke's conduct.

39.     After reporting what occurred, Mr. Gratton told Center Manager Loomis, "I'm not going on ride-alongs with your managers if they are going to be racist. Sam [O'Rourke] was calling me 'Boy' the whole time."

40.     Mr. Loomis responded dismissively, "That's just how he talks," then turned away.

41.     These events caused Plaintiff Tahvio Gratton severe humiliation and distress. He broke down crying in his car before driving home that day.

42.     UPS subjected Mr. Gratton to ongoing retaliation, including open displays of hostility.

43.     On or about May 25, 2018, Mr. Gratton came to the UPS Center on a day off in order to pick up a personal package. On-Road Supervisor Fromherz stopped Mr. Gratton and asked, "Are you working today?" When Mr. Gratton

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 6

SHISHIDO TAREN GOLDSWORTHY
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

SER-38

said "No," Fromherz yelled, "Then get the fuck off the property!" Mr. Gratton was shocked and asked, "What did you just say?" Fromherz repeated, "Get the fuck off the property."

44.    Mr. Gratton had never seen Fromherz treat another employee that way.

45.    Retaliation by the Center Managers continued. Mr. Gratton was laid off even more than before. Supervisor O'Rourke now refused to acknowledge or speak to Mr. Gratton.

46.    In June 2018, Mr. Gratton filed a complaint regarding the racial harassment by Supervisor O'Rourke and for Supervisor Fromherz yelling at him.

47.    Mr. Gratton also filed another written complaint on June 21, 2018 for being denied the chance to work when it was evident that there was work he could perform. At that time, the Center Managers were delivering driver misloads themselves, while putting Mr. Gratton on forced layoff. This again violated Mr. Gratton's eight-hour work guarantee under the union rules.

48.    Throughout his employment, Defendant assigned Mr. Gratton to a worse schedule and driving routes than his white colleagues.

49.    Specifically, he was assigned to the "mall route," which a witness describes as follows:

> We consider it the 'bulkiest' route. It usually requires more than one truck, and the route is hard to get done quickly, especially on days when it has a heavier pick-up volume. Other business routes and residential routes are faster and require less bulky boxes. Nobody likes the mall route and it's the only one they would let Tahvio do.

50.    Center Manager Erik Loomis discriminatorily tried to prevent Mr. Gratton from winning a bid on the mall route, so that it could be exclusively assigned to him. A witness states:

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 7

SHISHIDO TAREN GOLDSWORTHY
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

SER-39

Management became aware that Tavhio was going to bid for the route so that he could work consistently. At that point, Erik Loomis asked Brandon Ward, who was a white driver with more seniority than Tahvio, to bid for the mall route. I was working with Brandon Ward . . . and he specifically told me about this conversation with management. He said that management asked him to bid on the mall route because they knew that Tahvio was going to bid for it. Brandon Ward told me that management said they didn't want to have to give Tahvio work and wanted to keep him laid off. Brandon said he refused to bid on it because it's not a good route.

51.     After Mr. Gratton succeeded in obtaining the undesirable mall route, so that he could finally work consistently, Center Manager Loomis and Supervisor Fromherz purposefully made his route longer and began criticizing him for taking too long. A witness states:

Tahvio had to fight to get the mall route. When he was finally successful, Erik Loomis and Matt Fromherz started making his route longer so that he was out until late in the evening, finishing all of his stops. They also added out-of-the way stops to the mall route to make it harder for him. . . I saw it every day.

52.     Center Manager Erik Loomis and On-Road Supervisor Matt Fromherz openly expressed their disdain for Mr. Gratton. After he opposed their discriminatory refusal to assign work to him, they retaliatorily decided to over-work him. This was no secret. A witness states:

I specifically remember a conversation between Matt [Fromherz] and Eric [Loomis] in the Spring or Summer of 2018, when I was present with them in the main office. Matt said, "I'll do anything to not work Tahvio." Eric nodded and agreed. At the time of that conversation, Tahvio had just recently filed a grievance about Matt Fromherz and Eric Loomis not putting him on the schedule. After this grievance, Matt and Eric had to start posting the schedules each day so that the drivers could see who was being worked. Posting the schedule put Matt and Eric's scheduling choices out in the open, and did force

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 8

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

them to work Tahvio more, but they still tried to set him up for failure.

When Matt and Eric did feel forced to work Tahvio, they tried to find ways to criticize him or make false complaints about him. I was present and witnessed them saying things like, "Let's pile the work on him. If we're going to work him, let's make him *work*." For example, they would take opportunities to make his pickup load much heavier than that of other drivers. Then they would unfairly criticize Tahvio for "taking too long," even though he took less time than other drivers on the same route, while delivering a much heavier load.

. . .

I have been in a position to see Tahvio's performance. He is an excellent employee. He is hardworking, polite on-time, and eager to do his job. He always has a great attitude and is friendly and positive, even when being treated unfairly. I could tell that Tahvio took a lot of pride in being a stand-up employee and doing his job well. It made me sad to see him being treated unfairly, to where he was having to file grievances and raise complaints, just to get put onto the schedule at all. I never saw a white driver having to do this.

53.     The Center Managers went out of their way to retaliate against Mr. Gratton. Where he had previously been denied work, they now made his route harder and required him to regularly deliver the other drivers' misloads, keeping him out late into the night.

54.     Mr. Gratton began having to file complaints for being over-loaded and over-worked.

55.      The Center Managers continued to discriminatorily and retaliatorily single out Mr. Gratton and accuse him of performance issues. He would also have to file further complaints about these matters.

56.     Center Manager Erik Loomis treated Mr. Gratton with open disdain in front of the other drivers, singling him out for small, common issues and publicly shaming him.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 9

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

57.     Mr. Gratton was also repeatedly called on the loudspeaker in front of his peers to come into the manager's office for discriminatory scrutiny.

58.     For example, Mr. Gratton was reprimanded for having visible tattoos, while many white drivers also had visible tattoos and were not called into the office.

59.     Mr. Gratton was even called into the office for wearing a sweater, while other white drivers wore sweaters without issues.

60.     Mr. Gratton was not the only black employee who was subjected to such discrimination by Defendant. Other black drivers, particularly those who management associated with Mr. Gratton, suffered similar discrimination and harassment.

61.     For example, Center Manager Loomis attempted to force a black driver, Travis Anderson, to cut his hair after he made a complaint that he was not being paid correctly. Mr. Anderson had been wearing long throughout his employment with UPS and other white drivers were allowed to have long hair.

62.     As he did with Plaintiff Gratton, Center Manager Loomis also reprimanded Mr. Anderson for having visible tattoos, while white drivers were allowed to display theirs.

63.     Center Manager Loomis made another black driver, Xavier Briggs, "scratch" (successfully run a route within a certain amount of time) five times in order to pass a probationary period, when no other white drivers were required to do so.

64.     White drivers received superior routes and workloads compared to black drivers and, like Mr. Gratton, other black drivers were criticized for "taking too long" on their overloaded routes.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 10

SHISHIDO TAREN GOLDSWORTHY
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

65.    White employee-drivers were also given preferential treatment by being allowed to ask Defendant's management to take stops off their route in order to improve their route times. Black drivers, including Mr. Gratton, were not permitted to remove stops and instead would be criticized for being "slow" and taking too long to complete routes.

66.    When black divers finished their routes, they were required to go back out and help the white drivers finish theirs, as well as deliver "misloads." Misloads occur when a package is placed in the wrong delivery vehicle. White drivers were seldom asked to do the same for black drivers.

67.    Like Mr. Gratton, other black drivers were often paid incorrectly.

68.    Mr. Gratton stood up for himself, as well as other black drivers who were having similar experiences. He assisted the other black drivers in filing complaints and advocated for fair treatment of all black drivers.

69.    On June 11, 2020, Mr. Gratton filed a written complaint about being singled out and scrutinized for something that white employees were not. In his complaint, he stated: "This has been a noticeable issue with Erik Loomis on his overly negative and prejudiced choice of discipline towards his Black employees."

70.    Plaintiff Gratton's opposition to discriminatory treatment continued throughout his employment and drew further hostility and retaliation by the Center Managers. It was no secret that they wanted to fire him.

71.    Indeed, a witness reports that Center Manager Loomis approached him in his truck and warned him that if he associated with Mr. Gratton, "it's going to cause you a lot of problems in your UPS career."

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 11

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

**SER-43**

72.     Loomis then asked this witness if he had seen anything that Plaintiff Gratton might be doing wrong. Center Manager Loomis was retaliatorily fishing for information that could be used against Mr. Gratton.

73.     These are just examples of how Mr. Gratton and other black employees were discriminated against and retaliated against during their employment with Defendant UPS.

74.     Defendant targeted Mr. Gratton because of his race and protected activity and repeatedly tried to concoct false reasons to terminate his employment.

75.     Indeed, witnesses heard supervisors make comments like "I wish we could just get rid of Tahvio [Mr. Gratton]" and "I'll do whatever it takes to not work him."

76.     Ultimately, Defendant unlawfully terminated Mr. Gratton's employment on or about October 19, 2021.

77.     The supposed justifications Defendant gave for Mr. Gratton's termination are false and are pretextual.

78.     Defendant unlawfully terminated Mr. Gratton because of his race and because of his protected activity.

79.     Defendant engaged in unlawful employment practices against Plaintiff during his employment, in violation of, 42 U.S.C. § 1981, *et seq.* ("Section 1981"); RCW 49.60, *et seq.* ("WLAD"); and in retaliation for engaging in protected activity under these statutes.

80.     Defendant unlawfully terminated Plaintiff in violation of Washington public policy.

81.     Washington has declared that "practices of discrimination against any of its inhabitants because of race, creed, color, national origin, citizenship or

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 12

SHISHIDO TAREN GOLDSWORTHY
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

SER-44

immigration status, families with children, sex, marital status, sexual orientation, age, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." RCW 49.60.010.

82.    Washington has a public policy of ensuring that all employee are properly paid wages owed.

83.    Defendant failed to act to eliminate the discrimination and retaliation Mr. Gratton was subjected to during his employment.

84.    The effect of the practices complained of in the above paragraphs has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his race and opposition to Defendant's unlawful activities.

85.    The unlawful employment practices complained of in the above paragraphs were intentional.

86.    The unlawful employment practices complained of in the above paragraphs were done with malice or reckless indifference to Plaintiff's rights as protected by federal and state laws.

87.    Other black drivers, particularly those who the managers associated with Mr. Gratton, were similarly singled out for supposed minor policy violations.

## IV.    RESERVATION OF RIGHTS

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 13

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

Plaintiff reserves the right to add, revise, or withdraw any claims, or add additional parties during the course of the litigation as information is obtained through litigation.

## V.    PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A.    Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices.

B.    Order Defendant to make Plaintiff whole by providing appropriate back pay and front pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

C.    Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the above paragraphs, including out-of-pocket expenses, in an amount to be determined at trial.

D.    Order Defendant to make Plaintiff whole for the wrongful withholding of wages by providing relief under RCW 49.48 *et seq.* and RCW 49.52 *et seq.* or any other applicable statute, including awarding double damages.

E.    Order Defendant to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the acts complained of in the above paragraphs, including without limitation, emotional pain, suffering, and loss of enjoyment of life, in an amount to be determined at trial.

F.    Order Defendant to pay Plaintiff punitive damages for the conduct described in the above paragraphs, in amounts to be determined at trial, to the fullest extent allowed by law.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 14

SHISHIDO TAREN GOLDSWORTHY
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

G.    Order Defendant to pay Plaintiff for any and all tax consequences associated with the damages and cost award, including but not limited to attorney's fees.

H.    Award Plaintiff the costs of this action, including attorney's fees, expert fees, and all other costs to the fullest extent allowed by law.

I.    Award Plaintiff other damages including prejudgment interest and post judgment interest.

J.    Grant any additional further relief as provided by law, which this Court finds appropriate, equitable, or just.


Respectfully submitted this 22nd day of March, 2023.


By:  s/ Robin J. Shishido


By:  s/ Richard E. Goldsworthy
     Robin J. Shishido, WSBA No. 45926
     Richard E. Goldsworthy, WSBA No. 40684
     Shishido Taren Goldsworthy PLLC
     705 Second Avenue, Suite 1500
     Seattle, WA 98104
     Telephone: (206) 622-1604
     Email: rshishido@shishidotaren.com
            rgoldsworthy@shishidotaren.com
     Attorneys for Plaintiff

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 15

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

## <u>DECLARATION OF SERVICE</u>

I hereby certify under penalty of perjury under the laws of the State of Washington that on the date and in the manner listed below I caused delivery of a true copy of the attached document to the following attorneys for Defendant:

| | |
|---|---|
| Anne E. Reuben, WSBA No. 53299 | ☒ by Electronic Mail |
| Kimberly Holdiman, WSBA No. 57044 | ☐ by Facsimile Transmission |
| Littler Mendelson, P.C. | ☐ by First Class Mail |
| 600 University Street, Suite 3200 | ☐ by Hand Delivery |
| Seattle, WA 98101-7095 | ☐ by Overnight Delivery |
| Ph: (206) 623-3300 | ☒ by Notification via E-filing |
| areuben@littler.com | System |

DATED this 22nd day of March, 2023, at Seattle, Washington.


 s/ Robin J. Shishido
Robin J. Shishido, WSBA No. 45926
Richard E. Goldsworthy, WSBA No. 40684
Shishido Taren Goldsworthy PLLC
705 Second Avenue, Suite 1500
Seattle, WA 98104
Telephone: (206) 622-1604
Email: rshishido@shishidotaren.com
        rgoldsworthy@shishidotaren.com
Attorneys for Plaintiff

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 16

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

**SER-48**

THE HONORABLE THOMAS O. RICE

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON – YAKIMA

| | |
|---|---|
| TAHVIO GRATTON, an individual, | No. 1:22-cv-03149-TOR |
| Plaintiff, | |
| v. | STIPULATION AND PROPOSED ORDER TO ALLOW PLAINTIFF TO AMEND THE COMPLAINT |
| UNITED PARCEL SERVICE, INC., | |
| Defendant. | |

## STIPULATION

Pursuant to F.R.Civ.P. 15(a) and (c), the Parties hereby stipulate and jointly move the Court to allow Plaintiff to file a proposed First Amended Complaint ("FAC") (attached), to substitute United Parcel Service, Inc., an Ohio Corporation, in as the named defendant in this case.

Plaintiff originally named United Parcel Service, Inc. a Delaware corporation, as the Defendant. In its answer to the Complaint, Defendant stated that Plaintiff was an employee of the Ohio corporation, which is a subsidiary of the Delaware corporation with the same name. *ECF No. 7.* Defendant stated that it was answering Plaintiff's Complaint on behalf of the Ohio corporation and admitted that Plaintiff worked for that entity. *ECF No. 7.*

After exchanging information, the Parties agreed to allow Plaintiff to file the FAC to substitute the Ohio corporation in for the Delaware Corporation. The

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
(206) 622-1604

1  claims in the proposed FAC assert the same factual allegations against the Ohio

2  corporation as were contained in the original Complaint. As such, the proposed

3  FAC relates back to the original Complaint under F.R.Civ.P. 15(c).

4      For the above stated reasons, the Parties respectfully request that the Court

5  grant their Stipulation and Order that Plaintiff be permitted to file the Proposed

6  FAC under F.R.Civ.P. 15(a), and that the FAC relates back to the original

7  Complaint under F.R.Civ.P. 15(c).

9      IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

11  Dated: March 20, 2023.    Dated: March 20, 2023.

12  

13  */s Richard E. Goldsworthy*    */s Kimberly Holdiman*
Robin J. Shishido, WSBA #45926  Anne E. Reuben, WSBA #53299
Richard E. Goldsworthy, WSBA  areuben@littler.com
#40684  Kimberly Holdiman, WSBA
Shishido Taren Goldsworthy PLLC  #57044
705 Second Avenue, Suite 1500  kholdiman@littler.com
Seattle, WA 98104  Littler Mendelson, P.C.
Phone: (206) 622-1604  One Union Square
Email: rshishido@shishidotaren.com  600 University Street, Suite 3200
rgoldsworthy@shishidotaren.com  Seattle, WA 98101.3122
*Attorneys for Plaintiff*  Telephone: 206.623.3300
Facsimile: 206.447.6965
*Attorneys for Defendant*

STIPULATION AND PROPOSED ORDER TO ALLOW
PLAINTIFF TO AMEND THE COMPLAINT
Page 2

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
(206) 622-1604

SER-50

1    PURSUANT TO THE STIPULATION OF THE PARTIES, IT IS SO
2    ORDERED.

4    DATED: _____

6                                    The Honorable Thomas O. Rice
7                                    United States District Court Judge

STIPULATION AND PROPOSED ORDER TO ALLOW
PLAINTIFF TO AMEND THE COMPLAINT
Page 3

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
(206) 622-1604

**SER-51**

## DECLARATION OF SERVICE

I hereby certify under penalty of perjury under the laws of the State of Washington that on the date and in the manner listed below I caused delivery of a true copy of the attached document to the following attorneys for Defendants:

Anne E. Reuben, WSBA No. 53299  ☒ by Electronic Mail
Kimberly Holdiman, WSBA No. 57044 ☐ by Facsimile Transmission
Littler Mendelson, P.C.       ☐ by First Class Mail
600 University Street, Suite 3200   ☐ by Hand Delivery
Seattle, WA 98101-7095     ☐ by Overnight Delivery
Ph: (206) 623-3300       × by Notification via E-filing
areuben@littler.com       System

DATED this 20th day of March, 2023, at Seattle, Washington.

 s/ Richard E. Goldsworthy
Robin J. Shishido, WSBA No. 45926
Richard E. Goldsworthy, WSBA No. 40684
Shishido Taren Goldsworthy PLLC
705 Second Avenue, Suite 1500
Seattle, WA 98104
Telephone: (206) 622-1604
Email: rshishido@shishidotaren.com
   rgoldsworthy@shishidotaren.com
Attorneys for Plaintiff

STIPULATION AND PROPOSED ORDER TO ALLOW
PLAINTIFF TO AMEND THE COMPLAINT
Page 4

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
(206) 622-1604

**SER-52**

1

2

3

4

5

6

7

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON – YAKIMA

TAHVIO GRATTON, an individual

Plaintiff,

v.

UNITED PARCEL SERVICE, INC., a
Delaware Corporation,

Defendant.

No.

**COMPLAINT FOR DAMAGES**

**JURY TRIAL REQUESTED**

COMPLAINT FOR DAMAGES
Page i

## I.  NATURE OF THE ACTION

1.      This is an action for damages for declaratory judgment, equitable relief, and monetary damages, instituted to secure the protection of and to redress the deprivation of rights secured through the Washington Law Against Discrimination, RCW 49.60 et al. ("WLAD"), 42 U.S.C. § 1981 ("Section 1981"), and Washington's Tort of Wrongful Discharge in Violation of Public Policy.

2.      Plaintiff Tahvio Gratton ("Plaintiff" or "Mr. Gratton") is a former employee of Defendant United Parcel Service ("UPS"). During his employment, Mr. Gratton, a black man, was discriminated against and subjected to a hostile work environment based on his race and in retaliation for engaging in protected activity under Washington and Federal law. Mr. Gratton was discriminatorily and retaliatorily denied job opportunities and assignments because of his race and protected activity. Ultimately, he was unlawfully terminated by Defendant UPS in violation of the WLAD, Section 1981, and Washington common law. Plaintiff seeks monetary relief, including pecuniary and non-pecuniary damages, compensatory damages, and punitive damages to the fullest extent allowed by law.

## II.  PARTIES, JURISDICTION, AND VENUE

3.      Plaintiff Tahvio Gratton is a former employee of Defendant. Plaintiff is a resident of Yakima, Washington.

4.      Defendant UPS Delaware Corporation that transacts business in the Eastern District of Washington.

5.      The Court has federal question jurisdiction under 28 U.S.C § 1331 for claims brought under 42 U.S.C. § 1981.

COMPLAINT FOR DAMAGES
Page 1

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

6.      This Court has supplemental jurisdiction over Plaintiff's Washington law claims under 28 U.S.C. §1367.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's allegations occurred in the Eastern District of Washington, the subject employer is located in this District, and Defendant resides and/or does business in this District.

8.      At all relevant times, Defendant employed Plaintiff in the Eastern District of Washington. Defendant employs the requisite number of employees under the aforementioned statutes.

### III.    FACTUAL ALLEGATIONS

9.      Plaintiff reincorporates paragraphs 1 through 8.

10.     Plaintiff, Tahvio Gratton was employed by Defendant UPS as a Cover Driver and Delivery Driver from September 26, 2016 until his unlawful termination on October 19, 2021.

11.     In or around January 2018, Mr. Gratton transferred from Seattle UPS center to the Yakima UPS center.

12.      At the time that he transferred to UPS Yakima, Plaintiff had about one-and-a-half years of experience working as a Cover Driver.

13.     Plaintiff Gratton is African American.

14.     Immediately after beginning his work as a full-time Cover Driver in Yakima, UPS Managers treated Mr. Gratton differently from his white peers.

15.     On-Road Supervisor Matt Fromherz was short with him, ignored him, and spoke down to him, while being noticeably friendly towards white Drivers.

COMPLAINT FOR DAMAGES
Page 2

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

16.    Supervisor Fromherz, along with Center Manager Erik Loomis, was in charge of scheduling drivers and assigning routes. He gave Mr. Gratton less opportunity to work than the other Cover Drivers.

17.    Plaintiff Gratton would arrive at the UPS Center on a daily basis to learn that he was "laid-off" for the day.

18.    In order of seniority, Drivers are "laid off" when there is not enough work for them to perform, such that the lowest ranking Drivers will be denied work and compensation during periods of shortage.

19.    Often Mr. Gratton was the only Cover Driver who was laid off. It soon became apparent that the Center Managers were singling out Mr. Gratton and laying him off intentionally, even when there were work opportunities for him.

20.    In February 2018, when another Driver specifically asked Mr. Gratton to cover his route, On-Road Supervisor Fromherz quickly interjected, "No, not today." Fromherz provided no reason for refusing to allow Mr. Gratton to cover the route that day.

21.    On or around February 26, 2018 Mr. Gratton met with On-Road Supervisor Fromherz and asked him why he had not been allowed to cover the route. Fromherz responded: "Because you didn't come and ask me like a man."

22.    Mr. Gratton opposed such treatment. He told Mr. Fromherz, "That is belittling and attacking of my character."

23.    Mr. Gratton reported this treatment, including being denied the driving route, to Center Manager Erik Loomis, who did not seem concerned and gave no true response.

24.    UPS was not compensating Mr. Gratton for forced lay-off, as required under the union rules. Plaintiff Gratton also learned that even Part-Time

COMPLAINT FOR DAMAGES
Page 3

SHISHIDO TAREN GOLDSWORTHY
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

Cover Drivers were being given preference over him, in violation of the union rules regarding seniority.

25.     On April 19, 2018, Mr. Gratton filed a complaint regarding UPS laying him off without proper compensation.

26.     As a result of Mr. Gratton's complaint, the Center Managers were required to post a list revealing which drivers were working which routes each day.

27.     The list revealed that Plaintiff Gratton was the only driver who was actually not being allowed to work, and that the other drivers listed for lay off still got work.

28.     Mr. Gratton's complaints regarding racial harassment, discrimination and retaliation, resulted in further, ongoing retaliation.

29.     In Mr. Gratton's presence, On-Road Supervisor Matt Fromherz told other drivers that Mr. Gratton was the reason the list was up and that, "Now, you guys will be getting less days off," creating frustration by other drivers towards Mr. Gratton.

30.     On or about April 24, 2018, the Center Managers assigned Plaintiff Gratton a "ride along," in which a manager accompanies and observes a driver en route. Manager Sam O-Rourke, who rode along with Mr. Gratton, subjected him to racial harassment throughout the day by repeatedly referring to him as "Boy," among other disparaging remarks.

31.     Supervisor O'Rourke spent the day watching Mr. Gratton work, barking orders at him, and demeaning him based on his race.

32.     Mr. O'Rourke is white and younger than Mr. Gratton. Rather than referring to Mr. Gratton by name, he referred to him as "Boy" throughout the

COMPLAINT FOR DAMAGES
Page 4

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

day. For example, he said to Mr. Gratton, "Is this the hardest you've ever worked, Boy?" "Move faster, Boy, let's go!" "Boy, I told you to hurry!"

33.     Mr. O'Rourke also made offensive sports references, saying to Mr. Gratton, "Boy, why would I play you when I have a star running back?"

34.     When Mr. Gratton ran across the street to drop off a package, O'Rourke said, "There we go, Boy, that's what I like to see!"

35.     Early during the ride-along, Mr. Gratton openly opposed Mr. O'Rourke's racial harassment. He asked Mr. O'Rourke, "Why are you calling Boy? I'm not your Boy." Mr. O'Rourke said, "I'm from the South. That's how I talk." Mr. Gratton responded, "No black man in the South would be okay with you talking to him that way and I am not okay with it, so stop calling me that."

36.     Despite Mr. Gratton's open and direct opposition to such treatment, Mr. O'Rourke continued to call him "Boy" throughout the day and speak to him in a demeaning tone, even in front of customers.

37.     A Footlocker employee witnessed some of Mr. O'Rourke's conduct towards Tahvio Gratton that day, which she described as "shocking":

> It was about 10:00 AM or 11:00 AM when Tahvio came by, rang the bell and said "Hey. How's it going? Like he normally did when he began his delivery. The other man also cam inside the store and started talking to Tahvio in a very condescending tone.
>
> When Tahvio greeted me and asked how I was doing, the other man said, "Let's get going, boy, let's move." "I didn't tell you to talk, boy." He went on to call Tahvio "Boy" over and over again, while barking orders at him. Every time this man talked to Tavhio while in the Foot Locker store that day, he call him "boy." I was absolutely shocked.
>
> .     .     .
>
> There was no reason for this supervisor to be critical of Tahvio's pace of work that day. Tahvio was very quickly bringing in full dollies of

COMPLAINT FOR DAMAGES
Page 5

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

**SER-58**

boxes, as well as carrying some of the smaller boxes three at a time by hand. He finished the box delivery very quickly, as he always did. There was also absolutely no reason to keep referring to Tahvio as "boy." I felt certain that this supervisor was talking to Tahvio this way because he is black.

.   .   .

At the end of Tahvio's delivery that day, I was double-counting all of the boxes as I always did before singing off. During that moment of downtime, Tahvio and I again exchanged a few words. His supervisor barked, "I told you, boy, you're not supposed to talk!"

At this point, I really couldn't take anymore how condescending and offensive this supervisor was towards Tahvio. As the supervisor was signing the delivery paperwork, I told him, "I hope you don't get your boots too dirty or work too hard." He responded, "Oh trust me, I won't. I got this boy working."

38.    Upon returning to the Yakima UPS Center that day, Mr. Gratton went directly to Center Manager Erik Loomis's office and informed him of Mr. O'Rourke's conduct.

39.    After reporting what occurred, Mr. Gratton told Center Manager Loomis, "I'm not going on ride-alongs with your managers if they are going to be racist. Sam [O'Rourke] was calling me 'Boy' the whole time."

40.    Mr. Loomis responded dismissively, "That's just how he talks," then turned away.

41.    These events caused Plaintiff Tahvio Gratton severe humiliation and distress. He broke down crying in his car before driving home that day.

42.    UPS subjected Mr. Gratton to ongoing retaliation, including open displays of hostility.

43.    On or about May 25, 2018, Mr. Gratton came to the UPS Center on a day off in order to pick up a personal package. On-Road Supervisor Fromherz stopped Mr. Gratton and asked, "Are you working today?" When Mr. Gratton

COMPLAINT FOR DAMAGES
Page 6

SHISHIDO TAREN GOLDSWORTHY
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

SER-59

said "No," Fromherz yelled, "Then get the fuck off the property!" Mr. Gratton was shocked and asked, "What did you just say?" Fromherz repeated, "Get the fuck off the property."

44. Mr. Gratton had never seen Fromherz treat another employee that way.

45. Retaliation by the Center Managers continued. Mr. Gratton was laid off even more than before. Supervisor O'Rourke now refused to acknowledge or speak to Mr. Gratton.

46. In June 2018, Mr. Gratton filed a complaint regarding the racial harassment by Supervisor O'Rourke and for Supervisor Fromherz yelling at him.

47. Mr. Gratton also filed another written complaint on June 21, 2018 for being denied the chance to work when it was evident that there was work he could perform. At that time, the Center Managers were delivering driver misloads themselves, while putting Mr. Gratton on forced layoff. This again violated Mr. Gratton's eight-hour work guarantee under the union rules.

48. Throughout his employment, Defendant assigned Mr. Gratton to a worse schedule and driving routes than his white colleagues.

49. Specifically, he was assigned to the "mall route," which a witness describes as follows:

> We consider it the 'bulkiest' route. It usually requires more than one truck, and the route is hard to get done quickly, especially on days when it has a heavier pick-up volume. Other business routes and residential routes are faster and require less bulky boxes. Nobody likes the mall route and it's the only one they would let Tahvio do.

50. Center Manager Erik Loomis discriminatorily tried to prevent Mr. Gratton from winning a bid on the mall route, so that it could be exclusively assigned to him. A witness states:

COMPLAINT FOR DAMAGES
Page 7

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

Management became aware that Tavhio was going to bid for the route so that he could work consistently. At that point, Erik Loomis asked Brandon Ward, who was a white driver with more seniority than Tahvio, to bid for the mall route. I was working with Brandon Ward . . . and he specifically told me about this conversation with management. He said that management asked him to bid on the mall route because they knew that Tahvio was going to bid for it. Brandon Ward told me that management said they didn't want to have to give Tahvio work and wanted to keep him laid off. Brandon said he refused to bid on it because it's not a good route.

51.     After Mr. Gratton succeeded in obtaining the undesirable mall route, so that he could finally work consistently, Center Manager Loomis and Supervisor Fromherz purposefully made his route longer and began criticizing him for taking too long. A witness states:

Tahvio had to fight to get the mall route. When he was finally successful, Erik Loomis and Matt Fromherz started making his route longer so that he was out until late in the evening, finishing all of his stops. They also added out-of-the way stops to the mall route to make it harder for him. . . I saw it every day.

52.     Center Manager Erik Loomis and On-Road Supervisor Matt Fromherz openly expressed their disdain for Mr. Gratton. After he opposed their discriminatory refusal to assign work to him, they retaliatorily decided to over-work him. This was no secret. A witness states:

I specifically remember a conversation between Matt [Fromherz] and Eric [Loomis] in the Spring or Summer of 2018, when I was present with them in the main office. Matt said, "I'll do anything to not work Tahvio." Eric nodded and agreed. At the time of that conversation, Tahvio had just recently filed a grievance about Matt Fromherz and Eric Loomis not putting him on the schedule. After this grievance, Matt and Eric had to start posting the schedules each day so that the drivers could see who was being worked. Posting the schedule put Matt and Eric's scheduling choices out in the open, and did force

COMPLAINT FOR DAMAGES
Page 8

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

them to work Tahvio more, but they still tried to set him up for failure.

When Matt and Eric did feel forced to work Tahvio, they tried to find ways to criticize him or make false complaints about him. I was present and witnessed them saying things like, "Let's pile the work on him. If we're going to work him, let's make him *work*." For example, they would take opportunities to make his pickup load much heavier than that of other drivers. Then they would unfairly criticize Tahvio for "taking too long," even though he took less time than other drivers on the same route, while delivering a much heavier load.

.    .    .

I have been in a position to see Tahvio's performance. He is an excellent employee. He is hardworking, polite on-time, and eager to do his job. He always has a great attitude and is friendly and positive, even when being treated unfairly. I could tell that Tahvio took a lot of pride in being a stand-up employee and doing his job well. It made me sad to see him being treated unfairly, to where he was having to file grievances and raise complaints, just to get put onto the schedule at all. I never saw a white driver having to do this.

53.    The Center Managers went out of their way to retaliate against Mr. Gratton. Where he had previously been denied work, they now made his route harder and required him to regularly deliver the other drivers' misloads, keeping him out late into the night.

54.    Mr. Gratton began having to file complaints for being over-loaded and over-worked.

55.    The Center Managers continued to discriminatorily and retaliatorily single out Mr. Gratton and accuse him of performance issues. He would also have to file further complaints about these matters.

56.    Center Manager Erik Loomis treated Mr. Gratton with open disdain in front of the other drivers, singling him out for small, common issues and publicly shaming him.

COMPLAINT FOR DAMAGES
Page 9

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

57.     Mr. Gratton was also repeatedly called on the loudspeaker in front of his peers to come into the manager's office for discriminatory scrutiny.

58.     For example, Mr. Gratton was reprimanded for having visible tattoos, while many white drivers also had visible tattoos and were not called into the office.

59.     Mr. Gratton was even called into the office for wearing a sweater, while other white drivers wore sweaters without issues.

60.     Mr. Gratton was not the only black employee who was subjected to such discrimination by Defendant. Other black drivers, particularly those who management associated with Mr. Gratton, suffered similar discrimination and harassment.

61.     For example, Center Manager Loomis attempted to force a black driver, Travis Anderson, to cut his hair after he made a complaint that he was not being paid correctly. Mr. Anderson had been wearing long throughout his employment with UPS and other white drivers were allowed to have long hair.

62.     As he did with Plaintiff Gratton, Center Manager Loomis also reprimanded Mr. Anderson for having visible tattoos, while white drivers were allowed to display theirs.

63.     Center Manager Loomis made another black driver, Xavier Briggs, "scratch" (successfully run a route within a certain amount of time) five times in order to pass a probationary period, when no other white drivers were required to do so.

64.     White drivers received superior routes and workloads compared to black drivers and, like Mr. Gratton, other black drivers were criticized for "taking too long" on their overloaded routes.

COMPLAINT FOR DAMAGES
Page 10

SHISHIDO TAREN GOLDSWORTHY
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

SER-63

65.     White employee-drivers were also given preferential treatment by being allowed to ask Defendant's management to take stops off their route in order to improve their route times. Black drivers, including Mr. Gratton, were not permitted to remove stops and instead would be criticized for being "slow" and taking too long to complete routes.

66.     When black divers finished their routes, they were required to go back out and help the white drivers finish theirs, as well as deliver "misloads." Misloads occur when a package is placed in the wrong delivery vehicle. White drivers were seldom asked to do the same for black drivers.

67.     Like Mr. Gratton, other black drivers were often paid incorrectly.

68.     Mr. Gratton stood up for himself, as well as other black drivers who were having similar experiences. He assisted the other black drivers in filing complaints and advocated for fair treatment of all black drivers.

69.     On June 11, 2020, Mr. Gratton filed a written complaint about being singled out and scrutinized for something that white employees were not. In his complaint, he stated: "This has been a noticeable issue with Erik Loomis on his overly negative and prejudiced choice of discipline towards his Black employees."

70.     Plaintiff Gratton's opposition to discriminatory treatment continued throughout his employment and drew further hostility and retaliation by the Center Managers. It was no secret that they wanted to fire him.

71.     Indeed, a witness reports that Center Manager Loomis approached him in his truck and warned him that if he associated with Mr. Gratton, "it's going to cause you a lot of problems in your UPS career."

COMPLAINT FOR DAMAGES
Page 11

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

72.    Loomis then asked this witness if he had seen anything that Plaintiff Gratton might be doing wrong. Center Manager Loomis was retaliatorily fishing for information that could be used against Mr. Gratton.

73.    These are just examples of how Mr. Gratton and other black employees were discriminated against and retaliated against during their employment with Defendant UPS.

74.    Defendant targeted Mr. Gratton because of his race and protected activity and repeatedly tried to concoct false reasons to terminate his employment.

75.    Indeed, witnesses heard supervisors make comments like "I wish we could just get rid of Tahvio [Mr. Gratton]" and "I'll do whatever it takes to not work him."

76.    Ultimately, Defendant unlawfully terminated Mr. Gratton's employment on or about October 19, 2021.

77.    The supposed justifications Defendant gave for Mr. Gratton's termination are false and are pretextual.

78.    Defendant unlawfully terminated Mr. Gratton because of his race and because of his protected activity.

79.    Defendant engaged in unlawful employment practices against Plaintiff during his employment, in violation of, 42 U.S.C. § 1981, *et seq.* ("Section 1981"); RCW 49.60, *et seq.* ("WLAD"); and in retaliation for engaging in protected activity under these statutes.

80.    Defendant unlawfully terminated Plaintiff in violation of Washington public policy.

81.    Washington has declared that "practices of discrimination against any of its inhabitants because of race, creed, color, national origin, citizenship or

COMPLAINT FOR DAMAGES
Page 12

SHISHIDO TAREN GOLDSWORTHY
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

SER-65

immigration status, families with children, sex, marital status, sexual orientation, age, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." RCW 49.60.010.

82.     Washington has a public policy of ensuring that all employee are properly paid wages owed.

83.     Defendant failed to act to eliminate the discrimination and retaliation Mr. Gratton was subjected to during his employment.

84.     The effect of the practices complained of in the above paragraphs has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his race and opposition to Defendant's unlawful activities.

85.     The unlawful employment practices complained of in the above paragraphs were intentional.

86.     The unlawful employment practices complained of in the above paragraphs were done with malice or reckless indifference to Plaintiff's rights as protected by federal and state laws.

87.     Other black drivers, particularly those who the managers associated with Mr. Gratton, were similarly singled out for supposed minor policy violations.

## IV.     RESERVATION OF RIGHTS

COMPLAINT FOR DAMAGES
Page 13

SHISHIDO TAREN GOLDSWORTHY
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

SER-66

Plaintiff reserves the right to add, revise, or withdraw any claims, or add additional parties during the course of the litigation as information is obtained through litigation.

## V.    PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A.    Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices.

B.    Order Defendant to make Plaintiff whole by providing appropriate back pay and front pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

C.    Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the above paragraphs, including out-of-pocket expenses, in an amount to be determined at trial.

D.    Order Defendant to make Plaintiff whole for the wrongful withholding of wages by providing relief under RCW 49.48 *et seq.* and RCW 49.52 *et seq.* or any other applicable statute, including awarding double damages.

E.    Order Defendant to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the acts complained of in the above paragraphs, including without limitation, emotional pain, suffering, and loss of enjoyment of life, in an amount to be determined at trial.

F.    Order Defendant to pay Plaintiff punitive damages for the conduct described in the above paragraphs, in amounts to be determined at trial, to the fullest extent allowed by law.

COMPLAINT FOR DAMAGES
Page 14

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

G.      Order Defendant to pay Plaintiff for any and all tax consequences associated with the damages and cost award, including but not limited to attorney's fees.

H.      Award Plaintiff the costs of this action, including attorney's fees, expert fees, and all other costs to the fullest extent allowed by law.

I.      Award Plaintiff other damages including prejudgment interest and post judgment interest.

J.      Grant any additional further relief as provided by law, which this Court finds appropriate, equitable, or just.

Respectfully submitted this 18th day of October, 2022.

By: s/ Robin J. Shishido


By: s/ Richard E. Goldsworthy
      Robin J. Shishido, WSBA No. 45926
      Richard E. Goldsworthy, WSBA No. 40684
      Shishido Taren Goldsworthy PLLC
      705 Second Avenue, Suite 1500
      Seattle, WA 98104
      Telephone: (206) 622-1604
      Email: rshishido@shishidotaren.com
                  rgoldsworthy@shishidotaren.com
      Attorneys for Plaintiff

COMPLAINT FOR DAMAGES
Page 15

**SHISHIDO TAREN GOLDSWORTHY**
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206)622-1604

**SER-68**

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## for the

| | |
|---|---|
| TAHVIO GRATTON, an individual, | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | )    Civil Action No. |
| | ) |
| UNITED PARCEL SERVICE, INC. | ) |
| a Delware Corporation, | ) |
| | ) |
| | ) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  UNITED PARCEL SERVICE, INC.
300 DESCHUTES WAY SW STE 208 MC-CSC1,
TUMWATER, WA, 98501, UNITED STATES

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    ROBIN J. SHISHIDO
RICHARD E. GOLDSWORTHY
SHISHIDO TAREN GOLDSWORTHY, PLLC
705 2ND AVENUE, SUITE 1500
SEATTLE, WA 98104

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____

_____
_Signature of Clerk or Deputy Clerk_

**SER-69**

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____                       _____
                                                           *Server's signature*

                                              _____
                                                         *Printed name and title*

                                              _____
                                                           *Server's address*

Additional information regarding attempted service, etc:


| Print | Save As... | **SER-70** | | Reset |