No. 25-1724

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re Tahvio Gratton, Robin J. Shishido, and Dustin L. Collier,
*Petitioners*,

v.

United States District Court for the Eastern District of Washington
*Respondent*,

United Parcel Service, Inc.,
*Defendant and Real Party in Interest*

————————————————

On a Petition for Writ of Mandamus Directed to the U.S. District Court
for the Eastern District of Washington
Case No. 1:22-CV-03149
The Honorable Thomas O. Rice

————————————————

## RESPONSE TO PETITION FOR WRIT OF MANDAMUS

Blaine H. Evanson
bevanson@gibsondunn.com
Min soo Kim
mkim@gibsondunn.com
GIBSON, DUNN &
CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone:  949.451.3800
Facsimile:   949.451.4220

Theane Evangelis
tevangelis@gibsondunn.com
Madeleine F. McKenna
mmckenna@gibsondunn.com
GIBSON, DUNN &
CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

————————————————

*Attorneys for Real Party in Interest United Parcel Service, Inc.*

Joshua R. Zuckerman
jzuckerman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone:　202.955.8500
Facsimile:　202.467.0539

# TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ................................................................ 1

QUESTION PRESENTED ................................................... 4

BACKGROUND ................................................................ 5

    I.    Gratton Files Union Grievances and an EEOC Charge
        Against UPS ........................................................... 5

    II.    UPS Fires Gratton Due to Credible Allegations of
         Sexual Assault ......................................................... 7

    III.    The District Court Narrows Plaintiff's Suit and
         Excludes Evidence ................................................... 8

    IV.    Plaintiff's Counsel Repeatedly Violates the District
         Court's Prior Orders at Trial .............................. 10

    V.    The District Court Vacates the Jury Verdict and
         Orders a New Trial .............................................. 13

STANDARD OF REVIEW ............................................... 15

ARGUMENT ................................................................... 16

    I.    The District Court's Finding That Gratton's Counsel
        Committed Misconduct is Correct, and Certainly Not
        Clearly Erroneous ................................................ 17

        A.    Gratton's Counsel Introduced Prejudicial and
            Time-Barred Allegations of Racial Animus ............... 18

        B.    Gratton's Counsel Introduced Irrelevant and
            Prejudicial Evidence of Dismissed Claims ................. 23

        C.    Gratton's Counsel Introduced Prejudicial
            Evidence of UPS's Wealth ........................................ 27

i

II.    Mandamus Relief is Otherwise Improper ............................ 30

    A.    Petitioners Can Obtain Relief on Direct Appeal ......... 30

    B.    Petitioners Are Not Damaged in a Way
Uncorrectable on Appeal ............................................. 32

    C.    The District Court Did Not Make an "Oft-
Repeated" Error ............................................................ 36

    D.    The Mandamus Petition Does Not Present
Important Legal Issues ................................................. 37

III.    The Requested Relief is Overbroad. ...................................... 39

CONCLUSION ........................................................................ 41

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Allied Chem. Corp. v. Daiflon, Inc.*,
  449 U.S. 33 (1980) ........................................................ 1, 30, 38

*Barnhill v. United States*,
  11 F.3d 1360 (7th Cir. 1993) ............................................. 33

*Bauman v. U.S. Dist. Court*,
  557 F.2d 650 (9th Cir. 1977) ......................... 4, 16, 30, 36, 37

*In re BellSouth Corp.*,
  334 F.3d 941 (11th Cir. 2003) ........................................... 34

*Brady v. Gebbie*,
  859 F.2d 1543 (9th Cir. 1987) ........................................... 40

*City of Cleveland v. Peter Kiewit Sons' Co.*,
  624 F.2d 749 (6th Cir. 1980) ............................................ 28

*Clark Equip. Co. v. Lifts Parts Mfg. Co.*,
  972 F.2d 817 (7th Cir. 1992) ............................................ 36

*Colvin v. Sheets*,
  598 F.3d 242 (6th Cir. 2010) ............................................ 23

*Confederated Salish v. Simonich*,
  29 F.3d 1398 (9th Cir. 1994) ........................................ 36, 37

*Erno Kalman Abelesz v. OTP Bank*,
  692 F.3d 638 (7th Cir. 2012) ............................................ 32

*Fuery v. City of Chicago*,
  900 F.3d 450 (7th Cir. 2018) ............................................ 23

*Garcia-Aguilar v. United States Dist. Ct. for the S. Dist. of
  Cal.*,
  535 F.3d 1021 (9th Cir. 2008) ........................................... 37

iii

*In re Grice*,
   974 F.3d 950 (9th Cir. 2020)..................................................... 1, 15, 17

*Kingston v. Int'l Bus. Machines Corp.*,
   2022 WL 30315 (9th Cir. Aug. 1, 2022)............................................. 40

*In re Kirkland*,
   75 F.4th 1030 (9th Cir. 2023) ....................................................... 38

*In re Klamath Irrigation Dist.*,
   69 F.4th 934 (9th Cir. 2023) ......................................................... 16

*Leale v. U.S. Dist. Court for Cent. Dist. of Cal.*,
   841 F.2d 1129, 1988 WL 21175 (9th Cir. 1988)................................... 18

*In re Lewis*,
   212 F.3d 980 (7th Cir. 2000)......................................................... 32

*In re Mersho*,
   6 F.4th 891 (9th Cir. 2021) .......................................................... 17

*In re Nahyan*,
   485 Fed. Appx. 859 (9th Cir. 2012) ................................................ 21

*United States v. 4.0 Acres of Land*,
   175 F.3d 1133 (9th Cir. 1999)....................................................... 31

*United States v. Heredia*,
   483 F.3d 913 (9th Cir. 2007)......................................................... 2

*United States v. Spallone*,
   399 F.3d 415 (2d Cir. 2005) ......................................................... 22

*United States v. Tillman*,
   756 F.3d 1144 (9th Cir. 2014)............................................. 3, 31, 35, 36

*United States v. U.S. Dist. Court for Cent. Dist. of Cal.*,
   858 F.2d 534 (9th Cir. 1988)......................................................... 37

*Valenzuela-Gonzalez v. U.S. Dist. Court for Dist. of Ariz.*,
   915 F.2d. 1276 (9th Cir. 1990)....................................................... 37

iv

*In re Walsh,*
  15 F.4th 1005 (9th Cir. 2021) ..................................... 1, 3, 16, 17, 18, 22

*In re Williams,*
  156 F.3d 86 (1st Cir. 1998) ................................................. 40

*In re Zermeno-Gomez,*
  868 F.3d 1048 (9th Cir. 2017)............................................ 37

## Other Authorities

U.S. Sentencing Comm'n, 2021 Annual Report and
  Sourcebook of Federal Sentencing Statistics (2021) .......................... 31

## Rules

9th Cir. R. 33-1(c)(4) ................................................................. 34

## Treatises

11 Charles Alan Wright & Arthur Miller, *Federal Practice &*
  *Procedure* § 2818 (3d ed. 2025)........................................... 31

v

## INTRODUCTION

"A trial court's ordering of a new trial rarely, if ever, will justify the issuance of a writ of mandamus." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). Petitioners Tahvio Gratton (the plaintiff below) and Robin Shishido and Dustin Collier (his counsel) nevertheless ask this Court to issue a writ of mandamus to vacate the district court's fact-specific ruling ordering a new trial, without pointing to any new or important issues of law and based solely on alleged harm to Gratton's *counsel*. Mandamus is a "drastic and extraordinary remedy" (*In re Grice*, 974 F.3d 950, 954 (9th Cir. 2020); *In re Walsh*, 15 F.4th 1005, 1007 (9th Cir. 2021)), and it has *never* been ordered in these circumstances. The Court should deny the petition.

Gratton was terminated after an internal investigator concluded there were credible allegations he sexually assaulted a female coworker. Gratton sued UPS and ultimately convinced a jury to award him an unprecedented $39.6 million in emotional distress damages, plus $198 million in punitive damages. 1-ER-13. After granting UPS's Rule 50(b) motion for judgment as a matter of law on the punitive-damages award, the district court ordered a new trial on the remaining claims, concluding

1

that Plaintiff's counsel's "repeated violations of the [Court's] *in limine* rulings unfairly influenced the jury's award and warrant[] a new trial." 1-ER-7. "Given the shocking size of the award as compared to the admissible evidence presented at trial," the court was "left with the distinct impression" that "attorney misconduct permeated the trial and resulted in an excessive verdict." 1-ER-18–19. That conclusion—which was based on the court's firsthand observations and its "intimate knowledge of the record"—should be given deference here. *United States v. Heredia*, 483 F.3d 913, 921 (9th Cir. 2007).

Petitioners claim the district court misinterpreted its own *in limine* rulings in its post-trial ruling that Plaintiff's counsel committed misconduct. And they claim that the court's finding of misconduct has so harmed the professional reputations of Plaintiff's counsel that immediate relief is necessary.

Petitioners are wrong on the merits; their petition grossly mischaracterizes the trial record and the district court's rulings. And their petition does not come close to presenting a proper case for the extraordinary remedy of mandamus.

2

Gratton's counsel repeatedly introduced inflammatory, racially charged evidence and arguments that the district court had previously excluded as inadmissible, irrelevant, and prejudicial. They also ignored the district court's instructions to stop introducing information about UPS's financial resources without laying a foundation. 1-ER-13. It is no wonder that Plaintiff's baseless claim resulted in an unprecedented $239 million verdict. The district court thus did not err in finding Plaintiff's counsel repeatedly violated its rulings—much less commit a "clear abuse of discretion." *In re Walsh*, 15 F.4th at 1009.

Gratton's counsel do not substantiate their claim they are suffering some reputational harm from the district court calling out their misconduct during the trial, but even if they did, that does not justify a writ of mandamus. The sole case Petitioners rely on—*United States v. Tillman*, 756 F.3d 1144 (9th Cir. 2014)—did not concern violations of evidentiary rulings and attorney misconduct justifying a new trial, but was an attorney-disqualification proceeding where the attorney's disqualification and referral to the state bar's disciplinary arm without "any notice or opportunity to be heard" raised due process concerns. *Id.* at 1152. Mandamus was appropriate in *Tillman* because the defendant

3

was likely to accept a plea deal and the disqualification ruling would never be appealed. Here, however, Plaintiff will have every ability to challenge the district court's ruling after the scheduled retrial.

Petitioners also completely fail to satisfy the traditional mandamus factors. Mandamus relief is designed to correct "oft-repeated error[s]" by the district courts or "new and important problems" that might not be reviewable on "direct appeal." *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654–55 (9th Cir. 1977). There is nothing repeated or important about a district court's fact-specific finding of attorney misconduct that warranted a new trial. And the district court's ruling will be reviewable on appeal after the upcoming retrial. There is no basis here for the extraordinary remedy of mandamus to short-circuit the ordinary litigation process.

## QUESTION PRESENTED

Whether the district court clearly abused its discretion in interpreting its own *in limine* rulings and holding that Plaintiff's counsel committed attorney misconduct necessitating a new trial.

4

## BACKGROUND

### I.      Gratton Files Union Grievances and an EEOC Charge Against UPS

UPS hired Gratton as a unionized package car driver in Seattle in 2016; he transferred to the Yakima facility in 2018.  2-ER-90–91.

Shortly after his transfer to Yakima, Gratton filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging he was the victim of racial discrimination and harassment.  3-ER-586. Gratton is African-American, and the charge alleged that on April 25, 2018, an on-road supervisor referred to Gratton as "boy."  *Id.*  Gratton also alleged he was "denied work hours … in favor of less qualified non-black employees" and "yelled at and unfairly reprimanded."  *Id.*  In response to the EEOC charge, Gratton's manager, Erik Loomis, "counseled [the supervisor] not to use the word 'boy' in reference to Plaintiff again."  2-ER-294.

In 2020 and 2021, Gratton filed a number of union grievances, but his union determined some of these were unsubstantiated.  For example, in February 2021, Gratton filed a grievance alleging "[f]avoritism" and "harassment," stating that Loomis "has gone out of his way to make by job harder" by "overloading my route, giving me a worse truck and

5

instructing supervisors ... to retaliate against me." 5-ER-1065–66. Both UPS Labor Manager Karl Leyert and Gratton's union investigated and "agreed" there was "no retaliation at fault." 5-ER-1066. The district court concluded "Plaintiff was given this route in part because … he had no seniority to bid on routes and thus was left with a less desirable assignment" and that the truck was "associated with the [assigned] route." 2-ER-92. In September 2021, Gratton filed another grievance alleging "favoritism" and that his "route has been constantly manipulated to make [him] look like a slow driver." 5-ER-1090. Again, both Leyert and the union "found no merit" to the allegations. 5-ER-1155.

In June 2020, Gratton filed grievances alleging Loomis "racially discriminated against [him]" by asking Gratton to count the number of bags rather than packages, which Gratton alleged deprived him of bonus pay for handling excess packages. 5-ER-1085; 2-ER-97–98. The district court concluded that, contrary to Gratton's assertions (*see* Pet. 10), the evidence showed it "was internal policy to count bags rather than individual packages," and that the white driver was similarly "not allowed to count boxes" and was not paid a bonus. 2-ER-97–99.

6

Gratton filed several other grievances related to his mileage and overtime pay. 2-ER-102–03. Union-negotiated policy required drivers working unwanted overtime to file a grievance before receiving overtime pay, at which time they were paid triple wages. 2-ER-103. As the district court noted, "most of Plaintiff's grievances were filed during the pandemic," when "UPS's productivity had increased, perhaps by double," and one labor manager "estimated he received over 2,000 ... grievances as a result." *Id.* "Ultimately, [Gratton] was paid all overtime wages and related penalties resulting from" his grievances. 2-ER-104.

## II.    UPS Fires Gratton Due to Credible Allegations of Sexual Assault

On October 19, 2021, Gratton undisputedly touched his coworker Linda Hernandez from behind without her consent while she was squatting. According to Gratton, he "tripped" and grabbed Hernandez's hip to "keep [him]self from falling." 6-ER-1400–01. But Hernandez immediately accused Plaintiff of "inappropriately" touching her. 2-ER-104. UPS employee Jose Castillo witnessed the incident, which he and Hernandez reported to UPS's ethics hotline. 2-ER-105.

Security Supervisor Ryan Wiedenmeyer, "a neutral third-party investigator," examined the incident and interviewed Gratton,

7

Hernandez, Castillo, and other witnesses. 2-ER-118. Hernandez told Wiedenmeyer that Gratton "grabbed her right hip area while she was bent over on the loading dock and said something like 'Hey girl,'" which made her feel "uncomfortable, angry, disrespected, intimidated, and harassed." 2-ER-106. Castillo told Wiedenmeyer that he heard Gratton "say something like 'I have got to go one-on-one with you.'" 2-ER-107. And UPS employee Brandon Ward told Wiedenmeyer that Gratton admitted that "he had put his hand on Hernandez." *Id.*

Wiedenmeyer found that "the claim of unwanted physical contact was substantiated." 2-ER-108. Leyert pre-drafted a termination letter "as a contingency," which was routine practice, and ultimately decided to terminate Gratton's employment. 2-ER-109.

## III. The District Court Narrows Plaintiff's Suit and Excludes Evidence

Gratton sued UPS, alleging that he was subject to discrimination, a hostile work environment, and retaliation in violation of 42 U.S.C. § 1981, the Washington Law Against Discrimination (WLAD), and the tort of wrongful discharge in violation of public policy under Washington law. 1-SER-32, 53.

8

On summary judgment, the district court dismissed Gratton's discrimination and hostile work environment claims because Gratton failed to produce "comparator evidence which would satisfy his burden to establish a prima facie case of discrimination" and the alleged harassment was "insufficiently severe or pervasive." 3-ER-341–56. The court allowed Gratton's retaliation and wrongful termination claims to go to trial.

Importantly, in its summary judgment ruling, the district court held that the *existence* of Gratton's EEOC charge was admissible as proof that Gratton engaged in protected activity (3-ER-352), which UPS stipulated that Gratton did not have to prove (2-ER-157). But the court also held that Gratton could "not rely upon evidence of the discrete acts mentioned within that document to prove his" claims, because all of the events mentioned in the EEOC charge were "*outside* the limitations period." 3-ER-352.

Before trial, the district court reaffirmed in *in limine* rulings its exclusion of the time-barred acts mentioned in the EEOC charge, expressly ruling that Gratton could neither "present evidence from the EEOC document pertaining to a Yakima supervisor referring to him as

9

'boy,'" nor present the substance of any other time-barred allegations in the EEOC charge. 2-ER-153–55. The court emphasized that the alleged "discriminatory acts mentioned in the EEOC charge" were both "time-barred" and "irrelevant to the remaining [retaliation] claims." 2-ER-160–61.

The district court instructed that "[t]o the extent that Plaintiff intends to offer other evidence or testimony of racial discrimination or harassment into the trial record, he must be prepared to specifically articulate how those instances pertain to the remaining two elements of his retaliation claim and/or wrongful termination claim." 2-ER-160. Before offering such evidence, the court told Gratton his counsel must first "make a[] motion … outside the presence of the jury." *Id.*

## IV.     Plaintiff's Counsel Repeatedly Violates the District Court's Prior Orders at Trial

In her opening statement, Shishido not only mentioned the "boy" comment from the EEOC charge that the district court held was "time-barred" and "irrelevant" (2-ER-155, 160), but also used a slideshow demonstrative that specifically enlarged and highlighted those portions of the EEOC charge for the jury. 5-ER-961–62, 1028–29. She did so even though the court had ruled that the substance of the EEOC charge could

10

not be admitted. And she did so without raising this issue with the Court or UPS's counsel, as the Court had ordered pre-trial.

During Gratton's case-in-chief, Shishido and Collier repeatedly elicited witness testimony about the "boy" comment and other examples of alleged racial discrimination and harassment irrelevant to the remaining elements of Plaintiff's retaliation claims, over UPS's persistent—and sustained—objections. 5-ER-1178–79; 6-ER-1277–78, 1431. At one point, Collier read the contents of the EEOC charge verbatim into the record, including the "boy" comment and other allegations of racial discrimination and harassment. 6-ER-1344–45. Not once did Plaintiff's counsel ask the district court's permission to place this evidence of time-barred claims in front of the jury, as the court had ordered pre-trial. *See* 2-ER-160.

UPS objected to these "several deliberate violations of the motion *in limine* rulings by Plaintiff's counsel, including [Plaintiff's counsel's] specifically attempting to elicit testimony that there was race discrimination against black drivers outside of the context of the EEOC charge" and "testimony that was clearly before the limitations period." 6-

11

ER-1464–65.  The district court agreed and warned Plaintiff's counsel to "toe the line."  6-ER-1465.

Plaintiff's counsel did *not* toe the line.  They continued to elicit testimony about time-barred allegations, including one exchange where the district court sustained *six* consecutive objections to Collier's introduction of prejudicial and irrelevant information about alleged harassment that the court had previously excluded.  7-ER-1636–39. While cross-examining a different witness during UPS's case-in-chief, Collier monologued for the jury his own views and arguments regarding Fromherz's alleged harassment.  7-ER-1755–56.  In closing statements, Collier again told the jury that Gratton "had been called 'boy' in a racially derogatory manner by his white supervisor repeatedly."  8-ER-1890.

Collier also ignored the district court's express instructions to "lay a foundation" before asking questions about UPS's financial condition.  7-ER-1539.  Specifically, "Plaintiff questioned Loomis, who was neither employed with Defendant at the time nor was Defendant's Rule 30(b)(6) witness, about whether he knew that Defendant was a 90-billion-dollar-a-year company."  1-ER-12; 7-ER-1538–39.  Although Loomis said he did *not* have knowledge of UPS's financial status, Collier continued to ask

12

questions—over UPS's objections—that were designed to suggest to the jury UPS's financial status.  *Id.*; *see also infra*, 27–30.  The court told Collier to "move on," because he had not laid any foundation for his line of questioning, but he refused, and the court *again* had to tell him to "move on."  7-ER-1539–40; 1-ER-12–13.  During closing statements, Collier told the jury that "[t]his is the only place on earth where nine regular citizens can take a multinational corporation and bring it to its knees and make them listen."  1-ER-13.

The jury returned a verdict of $39.6 million for emotional distress damages and another $198 million in punitive damages.  2-ER-130–31.

## V.    The District Court Vacates the Jury Verdict and Orders a New Trial

After trial, the district court granted UPS's renewed motion for judgment as a matter of law on punitive damages.  2-ER-89.  The court concluded that Leyert "was the sole decisionmaker in Plaintiff's termination," that he "did not consult with anyone else in rendering the decision," and that there was no evidence he "harbored malicious or reckless indifference to Plaintiff's federally protected rights."  2-ER-108, 119.  Because Leyert was "the only employee with remotely enough company standing to be contemplated as a proxy for UPS," there was

13

"simply no basis for punitive damages on the evidence presented."  2-ER-115–16, 122.

UPS then moved for a new trial, arguing (among other things) that Gratton's counsel repeatedly violated the court's motion *in limine* orders. 1-SER-21–26.  Alternatively, UPS sought a new trial or remittitur because the jury's verdict was contrary to the weight of the evidence and because the jury's $39.6 million award for garden-variety emotional distress was so excessive as to shock the conscience.  1-SER-17–21.

Following briefing and oral argument, the district court granted UPS's motion.  1-ER-2.  The court held that "Plaintiff's counsel['s] repeated violations of the *in limine* rulings unfairly influenced the jury's award and warrants a new trial."  1-ER-7.  Despite the court's many reminders that the events alleged in Gratton's EEOC charge were time-barred, "throughout trial, Plaintiff's counsel disregarded this instruction and mentioned the specific discrete acts denoted by the Court as time barred in the presence of the jury."  1-ER-8.  Gratton's counsel "also introduced evidence of Defendant's financial condition without laying a proper foundation or achieving the grant of judicial notice."  1-ER-11. Counsel's misconduct persisted in the post-trial briefing, where counsel

14

misrepresented recent Washington state decisions, which led the court to again admonish counsel for "toe[ing] the line with respect to candor before the Court." 1-ER-15 n.2.

The district court concluded that the evidence presented at trial was "difficult to square with the amount awarded." 1-ER-17. Because the $39.6 million award for emotional damages was "vastly outsized in comparison to other awards for damages in other WLAD, 42 U.S.C. § 1981, and wrongful discharge cases," the court concluded that "[t]his inflated award is doubtless a result of passion or prejudice inflamed by the introduction of time barred evidence that cannot form the basis of the claims Plaintiff could assert at trial, and veers into the realm of punitive rather than compensatory damages." 1-ER-13–14. The court therefore granted a new trial. 1-ER-19.

## STANDARD OF REVIEW

"Because mandamus is a drastic and extraordinary remedy reserved only for really extraordinary causes," this Court will not grant a writ unless a petitioner "shows that his right to the writ is clear and indisputable." *In re Grice*, 974 F.3d at 954 (quotation marks omitted). Mandamus accordingly is available "only where the district court has

15

usurped its power or clearly abused its discretion." *In re Walsh*, 15 F.4th at 1007.

The Court considers five factors in determining whether to issue a writ of mandamus:  (1) Whether the petitioner "has other no other adequate means, such as a direct appeal, to attain the relief he or she desires"; (2) whether the petitioner "will be damaged or prejudiced in a way not correctable on appeal"; (3) whether the "district court's order is clearly erroneous as a matter of law"; (4) whether the "district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules"; and (5) whether the "district court's order raises new and important problems, or issues of first impression." *Bauman*, 557 F.2d at 654–55.  The Court does not "mechanically apply the *Bauman* factors." *In re Klamath Irrigation Dist.*, 69 F.4th 934, 940 (9th Cir. 2023).  A "showing of all factors" does not "mean that the writ must be granted," and "even where the *Bauman* factors are satisfied, the court may deny the petition." *Id.*

## ARGUMENT

The "drastic and extraordinary remedy" of mandamus should not issue here because the district court has not "usurped its power or clearly

abused its discretion." *In re Grice*, 974 F.3d at 954; *In re Walsh*, 15 F.4th at 1007. The court was correct in finding that Gratton's counsel's misconduct permeated the entire trial and inflamed the jury to award an unprecedented, outsized damages award relative to the evidence presented. Plaintiff's petition challenges a fact-specific order that does not raise any new or important questions of law, and which Plaintiff will be able to challenge on direct appeal following the retrial. And his only proffered claim of irreparable harm—to his counsel's reputation—is not a proper basis for circumventing the final-judgment rule. The Court should deny the petition.

## I. The District Court's Finding That Gratton's Counsel Committed Misconduct is Correct, and Certainly Not Clearly Erroneous

"Analysis of whether to grant a writ usually begins with the third *Bauman* factor of clear error, because the absence of the third factor is dispositive." *In re Mersho*, 6 F.4th 891, 898 (9th Cir. 2021). "'Clear error' is a highly deferential standard of review," and the Court will "not issue a mandamus 'merely because the petitioner has identified legal error.'" *In re Walsh*, 15 F.4th at 1008–09. Rather, the Court must come to a "'firm conviction' that the district court misinterpreted the law ... or

17

committed a 'clear abuse of discretion.'" *Id.* at 1009. It is "abundantly clear" that "mandamus is generally not available to correct the erroneous discretionary decisions of the district courts"—such as the decision to grant a new trial. *Leale v. U.S. Dist. Court for Cent. Dist. of Cal.*, 841 F.2d 1129, 1988 WL 21175, at *3–5 (9th Cir. 1988).

Petitioners utterly fail to establish the third *Bauman* factor, and that failure alone warrants denial of the petition.

## A. Gratton's Counsel Introduced Prejudicial and Time-Barred Allegations of Racial Animus

The district court excluded prejudicial evidence of time-barred acts and of alleged racial discrimination or harassment as irrelevant to the remaining claims, but Gratton's counsel repeatedly flouted these rulings. The court did not err in ordering a new trial—much less "usurp[] its power or clearly abuse[] its discretion." *In re Walsh*, 15 F.4th at 1007.

Petitioners complain they did not engage in misconduct because the court had ruled that "the [EEOC charge] itself may come in as evidence of Plaintiff engaging in protected activity," and "an attorney's reference to *admitted evidence* is plainly not misconduct." Pet. 26–27. But the misconduct that warranted a retrial was not counsel's references to "the

18

document itself"; it was their constant, repeated, and unapologetic reference to *the material contained in the document*.

There is no doubt that the district court excluded the material in the EEOC charge. The court's summary judgment order held that the discrete acts alleged in the document fell outside of the limitations period. 3-ER-352. And the court denied Gratton's motion *in limine* to "present evidence from the EEOC document," because the "discriminatory acts mentioned in the EEOC charge," including the "boy" comment, were "time-barred and irrelevant to the remaining claims." 2-ER-153–56, 160–61. The fact that Plaintiff filed a charge was admissible, but the details of the charge were not. Mr. Collier confirmed on the record that the district court's "ruling was that the charge could come in but not the evidence of the underlying acts." 6-ER-1332.

Plaintiff's counsel nevertheless repeatedly referenced the material in the EEOC charge that the district court excluded. During her opening argument, Shishido highlighted the "boy" comment on a slide displaying the EEOC charge. 5-ER-1028–29; 1-ER-8; 5-ER-961–62. During Gratton's case-in-chief, both Shishido and Collier repeatedly elicited testimony about the time-barred contents of the EEOC charge. 1-ER-8–

19

9; 5-ER-1178–79; 6-ER-1431.   Collier read the contents of the EEOC charge verbatim to the jury.  6-ER-1344–45.

During closing arguments, Collier reminded the jury about the "boy" comments and editorialized about it—arguing that Gratton "had been called 'boy' in a racially derogatory manner by his white supervisor repeatedly." 8-ER-1890.  The district court properly concluded that this soliloquy was "particularly inflammatory given the abstract nature in which it was presented." 1-ER-11.  Specifically, Fromherz and Loomis were "the only white supervisors who testified at trial," so the jury was left "to assume it was either Fromherz or Loomis who made the comment, which is untrue and irrelevant as a matter of law." *Id.*

Petitioners claim that Gratton's counsel "obeyed [the district court's] ruling, refraining from presenting evidence of the discrete acts mentioned in the EEOC charge, and instead introducing only the EEOC charge itself, precisely as Respondent directed." Pet. 27.  That is demonstrably false, as all the examples above show.

To the extent there was any ambiguity in the district court's pre-trial orders regarding what was permissible, Plaintiff had the obligation to seek clarification.  After being told by the court—over and over again—

20

that they were violating the *in limine* orders, Plaintiff's counsel should have stopped introducing the evidence, asking witnesses questions about the evidence, and highlighting it before the jury.

The district court told Plaintiff pre-trial that "[t]o the extent that Plaintiff intends to offer other evidence or testimony of racial discrimination or harassment into the trial record, he must be prepared to specifically articulate how those instances pertain to the remaining two elements of his retaliation claim and/or wrongful termination claim." 2-ER-160.    Before offering such evidence, Plaintiff's counsel was supposed to "make a[] motion … outside the presence of the jury." *Id.*

Not once did Plaintiff's counsel make such a motion, or articulate how the evidence they were seeking to introduce would satisfy the requirements of the district court's *in limine* order.  They simply made the statements in open court (in both opening and closing) or asked the questions of witnesses, and forced UPS to object—over and over again.

Even if there were some ambiguities in the district court's *in limine* orders, the court's rulings during the trial, and whether Plaintiff's counsel violated the rulings, this Court's inquiry on a petition for mandamus is not *de novo* review.  *See In re Nahyan*, 485 Fed. Appx. 859,

21

861 (9th Cir. 2012).  Rather, mandamus will issue only if the district court "clearly abused its discretion" (*In re Walsh*, 15 F.4th at 1007), and the district court certainly did not abuse its discretion in interpreting and enforcing its own orders.  *See United States v. Spallone*, 399 F.3d 415, 423 (2d Cir. 2005) ("When an issuing judge interprets his own orders … we will not reverse the judge's construction of an ambiguity in his own words except for abuse of discretion.").

Petitioners point out the district court once overruled UPS's objection to Collier reading the EEOC charge verbatim.  Pet. 28.  But one evidentiary ruling made on the fly does not negate the court's earlier orders and the series of rulings during the trial, which were crystal clear that Gratton could not introduce the contents of the EEOC charge—a requirement Collier understood and affirmed.  *See* 6-ER-1332. Petitioners cite another instance of the court overruling UPS's objection, but that exchange did not involve the contents of the EEOC charge.  Pet. 28; 7-ER-1619.

Petitioners dispute that Shishido prompted testimony about the "boy" comment from one of their witnesses (Travis Anderson), and claim that she "could not possibly have known Anderson would reference the

22

'boy' incident." Pet. 28–29. But Gratton's counsel had a duty to prepare Anderson in advance to obey *in limine* rulings. *Fuery v. City of Chicago*, 900 F.3d 450, 457 (7th Cir. 2018). And while Petitioners feign innocence, Anderson testified about the "boy" comment only after Shishido asked him about "wrong[s]" Gratton felt he had suffered at work; it should have come as no surprise that Anderson would cite the "boy" comment as an example of a "wrong" perceived by Gratton. 5-ER-1177–79.

Petitioners also fault UPS for not seeking a curative instruction (Pet. 29), but the "boy" comment "created a risk that the entire jury might have been tainted, and could not be fixed by a curative instruction," because that "improper and prejudicial remark[]" was "intended to [and did] influence the jury in reaching its verdict" and "was made 'at the worst possible moment'—during closing arguments." *Colvin v. Sheets*, 598 F.3d 242, 254 (6th Cir. 2010). The jury repeatedly heard an incredibly prejudicial statement that it was not supposed to hear, and no curative instruction could have unrung the bell.

## B. Gratton's Counsel Introduced Irrelevant and Prejudicial Evidence of Dismissed Claims

Gratton's counsel also brought in other inadmissible evidence of racial discrimination and harassment that was wholly unrelated to

23

Gratton's retaliation and wrongful termination claims, in violation of the court's evidentiary rulings. 1-ER-9–10.

For example, Shishido asked a witness about third-party complaints regarding Fromherz's alleged harassment. 1-ER-9; 6-ER-1238. She asked a different witness why he "would have lost [his] cool in Mr. Gratton's position," and pounced on his response that Gratton was "harassed at work." 6-ER-1277–78; 1-ER-9. Collier's reading of the EEOC charge verbatim included references to inadmissible allegations of discrimination and harassment. 6-ER-1345. In one exchange, Collier interrogated Fromherz about his alleged harassment, over six consecutive sustained objections. 7-ER-1636–39. Later, Collier used cross-examination to monologue for the jury his own views and arguments regarding Fromherz's alleged harassment, such as his belief "that there's been overwhelming evidence of Matthew Fromherz having a six-year pattern of retaliation, workplace bullying, harassment and the company tolerating it," and his unverified assertion that Fromherz admitted that there were complaints made about a "hostile work environment" and him being "disrespectful, blaming, yelling and [being] argumentative." 7-ER-1755–56.

24

Petitioners do not even attempt to argue they followed the district court's instructions for introducing any of this evidence—i.e., that they file a motion, "outside the presence of the jury," to seek permission to introduce examples of racial discrimination and harassment. 2-ER-160.

Petitioners argue instead that this evidence of alleged discrimination and harassment was fair game because "UPS opened the door" by attacking Gratton's evidence of retaliation. Pet. 30–31. But UPS's defense against Gratton's *retaliation* claim did not open the door to evidence of the dismissed *discrimination* and *harassment* claims. And because UPS stipulated to the protected activity element of Gratton's retaliation claim (2-ER-157), there was no reason for his counsel to introduce evidence relating to his dismissed discrimination and harassment claims—other than to prejudice UPS.

Petitioners misleadingly claim the district court admitted the evidence of Fromherz's alleged harassment. Pet. 31–32. The court admitted an email from Lisa Irvine, a former UPS talent acquisition specialist, to Human Resources about Fromherz's behavior—and allowed Collier to question Irvine about it. 2-ER-167–68; 6-ER-1228–38. But the problem wasn't questioning Irvine about her own email; the problem was

25

asking her about third-party complaints of harassment, which was hearsay. 6-ER-1238. The district court didn't admit *that* evidence, and accordingly sustained UPS's objection. 6-ER-1239.

Petitioners claim Collier was merely trying to cross-examine Fromherz about complaints that had already been admitted. Pet. 32. Petitioners do not even cite Fromherz's cross-examination. *See id.* (citing 6-ER-1227–35, 1237–38, 1252–53). And they do not explain how asking Fromherz about complaints made about him is relevant to Gratton's retaliation claim. Unlike Irvine's email to HR, which the district court had admitted to show that UPS was on notice of a "retaliatory environment created by Supervisor Fromherz" (2-ER-167), Petitioners do not explain how Fromherz's awareness of third-party accusations could prove UPS's knowledge—indeed, when pressed to show the complaints' relevance, Collier argued that they were relevant only to show "a pattern of harassment, retaliation, and workplace bullying." 7-ER-1637–39.

Petitioners also blame the district court for Collier's decision to disregard multiple sustained objections. They argue that because the court told Collier to narrow his questioning, he was forced to "ask about the four already admitted employee complaints individually" for

26

appellate preservation reasons.  Pet. 32–33 (emphasis omitted).[1]  But instead of preserving this argument at a sidebar, Collier read the prejudicial and irrelevant comments contained in the complaints to the jury, including that Fromherz was "accused" of "workplace bullying, harassment, and retaliation."  7-ER-1638–39.

## C. Gratton's Counsel Introduced Prejudicial Evidence of UPS's Wealth

Gratton's counsel repeatedly violated the court's orders by making baseless arguments about UPS's financial condition without laying any foundation or introducing admissible evidence.

In questioning Loomis—who had no knowledge of UPS's financial status—Collier asked numerous questions aimed at suggesting to the jury UPS's size and financial strength.  Collier asked Loomis to confirm that "UPS is a 90-billion-dollar-a-year company," and asked whether he knew that "UPS has 90 billion a year in annual revenue," "9 billion in annual profits," and "6.1 billion in liquid capital."  7-ER-1538–39.  This questioning continued over both UPS's objections and the district court's instructions to "move on."  7-ER-1539–40.

---

[1] The complaints were not admitted because Gratton agreed he would not introduce them.  7-ER-1634–35, 1638–49; 2-ER-167.

27

During closing statements, Collier egged on the jury by telling them that they had a chance to "stand up to" UPS as "nine regular human beings," and warned them that they're "never doing this again." 8-ER-1907. He emphasized the contrast between them ("nine regular citizens") and UPS ("a multinational corporation"), and told them "[t]his is the only place on earth" where they could "bring [UPS] to its knees and make them listen" (8-ER-1907)—expressly appealing to the jury's "passion and prejudice" against UPS based on its "size" and the "financial disparity" between the parties. *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756–57 (6th Cir. 1980).

Petitioners claim the district court allowed Gratton to ask Loomis about UPS's financial condition (Pet. 35), but that is a gross mischaracterization of the record. They brazenly misquote the court as allowing Gratton's counsel to "lay a foundation" for UPS's financial condition through Loomis. Pet. 35. The court did the opposite—it warned Collier that he would "have to lay a foundation," and told him to "move on" because it was clear Loomis "[did]n't know the financial condition of UPS." 7-ER-1539–41; *see also* 5-ER-956–60. In the portion of the trial record cited by Petitioners, the court allowed Collier to question Loomis

28

because Collier represented that Loomis would testify about "the budget for the [Yakima] area." 5-ER-959. But Collier proceeded to ask Loomis about the revenues and profits of UPS's parent company, even though it was clear Loomis had no personal knowledge. *See id.*

Petitioners contend UPS did not contemporaneously object to Collier's description of UPS as a "multinational corporation" during closing argument despite "never successfully presenting evidence that Gratton had sued the parent company." Pet. 35. But Collier's misconduct during closing arguments was just one of the *many* instances of misconduct that "permeated the trial." *See* 1-ER-18.

Petitioners argue that calling UPS a "multinational corporation" during closing argument was allowed because UPS introduced into evidence a "Policy Handbook" stating that UPS "provide[s] dependable global services." Pet. 36 (capitalization altered). This post hoc justification ignores the district court's finding that Gratton did not meet his burden to show that he actually "sued the parent company." 1-ER-13.

Finally, Petitioners try to shift the blame for questioning Loomis about an SEC form to UPS, accusing UPS's counsel of misrepresenting

29

that the "UPS, Inc." listed on the form did not employ Gratton. Pet. 34. That is completely irrelevant to the issue of Collier inappropriately and persistently badgering Loomis about UPS's financial condition without laying a foundation. Moreover, *Gratton* was the one who amended his complaint to substitute the Ohio corporation named "UPS, Inc." instead of the Delaware corporation named "UPS, Inc." that was listed on the SEC form. 1-SER-49.

## II. Mandamus Relief is Otherwise Improper

The other four *Bauman* factors each weigh against mandamus because the requested relief is available on direct appeal and the case-specific idiosyncrasies of the attorney misconduct here pose no new or important questions of law.

### A. Petitioners Can Obtain Relief on Direct Appeal

The first *Bauman* factor asks whether Petitioners can obtain the "desire[d]" relief via "other adequate means, such as a direct appeal." *Bauman*, 557 F.3d at 654. Petitioners' desired relief—that "the order [granting a new trial] should be vacated and the Judgment restored" (Pet. 37)—indisputably is available "on direct appeal after a final judgment has been entered." *Allied Chem.*, 449 U.S. at 36. On direct appeal, this

30

Court may "instruct the district court to reinstate the original jury verdict" if it determines the district court erred in granting a new trial. *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1143 (9th Cir. 1999).

Petitioners argue that Gratton "satisfie[s] the first *Bauman* factor for the same reasons as *Tillman*," because "Gratton may settle or prevail again on retrial, thereby depriving his counsel of the opportunity to clear their names on appeal." Pet. 23. But in *Tillman*, the mandamus petitioner was a criminal defense attorney who sought vacatur of orders disqualifying and sanctioning counsel. *United States v. Tillman*, No. 13-10131 (9th Cir.), Dkt. 16 at 68. This Court held that the first factor supported a writ of mandamus because "it is unlikely that the removal order" or "intertwined" sanctions order "will ever be reviewed" if the defendant accepted a plea bargain or prevailed on the merits, which happens in nearly 99% of criminal cases. *Tillman*, 756 F.3d at 1151; *see* U.S. Sentencing Comm'n, 2021 Annual Report and Sourcebook of Federal Sentencing Statistics at 56 (2021). But here, an appeal is particularly likely given the enormous sums of money at stake. Even if Gratton prevails at retrial, he can appeal the new trial order. 11 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 2818 (3d ed.

31

2025). The possibility that Plaintiff may choose to settle his claims does not justify mandamus relief; that possibility exists in *every* civil case, and the "pressure to settle … is not enough to justify an encroachment on the final-judgment rule by use of mandamus." *Erno Kalman Abelesz v. OTP Bank*, 692 F.3d 638, 652 (7th Cir. 2012).

## B. Petitioners Are Not Damaged in a Way Uncorrectable on Appeal

The second *Bauman* factor—whether the petitioner will be damaged or prejudiced in a way not correctable on appeal (654 F.3d at 841)—also weighs against writ relief. Gratton has no judicially cognizable interest in "the reputations and business interests of [his] counsel" (Pet. 38), and therefore cannot "locate irreparable injury in the damage to [his] lawyers' reputation" (*In re Lewis*, 212 F.3d 980, 983 (7th Cir. 2000)). Shishido and Collier did not suffer any *unwarranted* reputational harm because they did in fact violate the district court's orders (*supra*, at 17–30), but any prejudice likewise is correctable on direct appeal because this Court can vacate the finding of attorney misconduct.

Shishido and Collier also do not substantiate their claims that they presently are suffering irreparable harm that necessitates immediate

relief. Their general allegations about conversations with unidentified people do not amount to "anything more than speculative harm to their professional reputations." *Barnhill v. United States*, 11 F.3d 1360, 1371 (7th Cir. 1993).

Shishido claims in her declaration that "[m]ultiple colleagues contacted [her]" (8-ER-2058 ¶ 7), but she does not identify these "colleagues" or allege that she suffered reputational or financial harm from these communications. She "anticipate[s] that adversaries in future cases will see this publicly-available finding and view it as an invitation to create prejudice against [her] clients" (8-ER-2059 ¶ 9), but that is nothing more than speculation. And while Shishido accuses UPS of "inappropriately weaponiz[ing] the finding in publicly-filed pleadings in order to prejudice Plaintiff" (8-ER-2059 ¶ 8), there is nothing inappropriate about a party citing a district court's prior order—the law of the case—in further proceedings before the same court.

Collier avers that he has "been forced to discuss the misconduct findings with colleagues, clients (both current and prospective), and even judges on a near daily basis," but he fails to identify these people or to explain how or whether these discussions have led to lost business. 8-

33

ER-2054–55 ¶ 18. His unsupported claim that the order is harming his "entire firm's ability to attract and retain clients in the future" (8-ER-2055 ¶ 18) is nothing more than a "conclusory assertion[] of dire consequences to [his] practice." *In re BellSouth Corp.*, 334 F.3d 941, 964 (11th Cir. 2003).

Collier claims UPS's counsel "weaponized" the new trial order "during a mandatory settlement conference" and "cited [it] as a reason why [his] client should reduce his settlement expectations." 8-ER-2055 ¶ 18. That was a confidential mediation call with the Ninth Circuit mediator, and Petitioners are violating Circuit Rule 33-1 by disclosing those discussions. *See* 9th Cir. R. 33-1(c)(4) (such discussions "may not be disclosed to anyone who is not a participant in the mediation"). In any event, comments about the case to a mediator in a confidential session could not possibly have caused any reputational harm to Collier.

Petitioners attempt to liken these intangible harms to that suffered by counsel in *Tillman*—the sole cited case where this Court has granted mandamus due to a finding of attorney misconduct—but their comparison falls woefully short.

34

Court-appointed counsel in *Tillman* was supposed to receive payment vouchers for representing a criminal defendant. He did not receive payment and complained to the judge, who accused him of "attempting to extort the court," removed him from the case, and referred him to the state bar for disciplinary proceedings, all "without giving [him] any notice or opportunity to be heard." *Tillman*, 756 F.3d at 1148, 1152–53.

This Court granted a writ of mandamus because the district court's denial of due process "violated … clearly established law." *Tillman*, 756 F.3d at 1152. Counsel suffered immediate and tangible injuries from the denial of due process. He faced financial harm because "inordinate delays in processing … vouchers stretch lawyers to their economic limits," and the order harmed his ability to litigate other cases because judges had "already questioned [counsel] about the ethical implications of the order" disqualifying him. *Id.* at 1151.

In contrast, Shishido and Collier were not sanctioned, offer no evidence of financial harm, and had every opportunity to be heard. They fully briefed and argued the question whether they committed misconduct. 2-ER-77–83. A district judge rejected their arguments after

35

full consideration, and they will have a chance to challenge that ruling once this case is properly appealed. Their mere interest in having "an uncomfortable precedent removed from the books" cannot justify a writ of mandamus that rescues them from their self-inflicted wounds. *Clark Equip. Co. v. Lifts Parts Mfg. Co.*, 972 F.2d 817, 820 (7th Cir. 1992), *overruled on other grounds by Martinez v. City of Chicago*, 823 F.3d 1050 (7th Cir. 2016).

## C. The District Court Did Not Make an "Oft-Repeated" Error

The remaining *Bauman* factors also counsel against granting mandamus relief. The fourth factor asks whether the district court made an "oft-repeated" error. *Bauman*, 557 F. 2d at 655. The district court held that Rule 59 necessitates a new trial because of case-specific attorney misconduct. 1-ER-7–18. Whether Rule 59 relief is "applicable in the present circumstances" is a "fact-specific inquiry with limited application beyond this case." *Confederated Salish v. Simonich*, 29 F.3d 1398, 1405 (9th Cir. 1994). Put differently, an order finding that "one individual attorney" (or group of attorneys) committed misconduct is not "oft-repeated." *Tillman*, 756 F.3d at 1153.

36

Gratton argues that the district court's order "reflects the same erroneous misconduct finding repeated across numerous prior rulings and pieces of admitted evidence." Pet. 25. But the judge did not make "repeated" findings of misconduct. The only order finding misconduct is the order granting a new trial. Regardless, an error is "oft-repeated" only when "several judges" make the same error in different cases. *In re Zermeno-Gomez*, 868 F.3d 1048, 1053 (9th Cir. 2017); *see also Garcia-Aguilar v. United States Dist. Ct. for the S. Dist. of Cal.*, 535 F.3d 1021, 1026 (9th Cir. 2008) ("And it appears to be an 'oft-repeated error,' as three district judges committed the exact same error."). Because "there is no showing that courts frequently err" in finding attorney misconduct or applying Rule 59, the fourth *Bauman* factor counsels against mandamus. *Confederated Salish*, 29 F.3d at 1405.

## D. The Mandamus Petition Does Not Present Important Legal Issues

The fifth and final *Bauman* factor instructs that "new and important problems, or legal issues of first impression" raised by the district court's order weigh in favor of mandamus. *Bauman*, 557 F.2d at 655. Such problems and issues address novel questions of law such as the availability of constitutional defenses in criminal cases (*United States*

37

*v. U.S. Dist. Court for Cent. Dist. of Cal.*, 858 F.2d 534, 537 (9th Cir. 1988)), or "the construction of a federal procedural rule in a new context" (*Valenzuela-Gonzalez v. U.S. Dist. Court for Dist. of Ariz.*, 915 F.2d. 1276, 1279 (9th Cir. 1990); *see also In re Kirkland*, 75 F.4th 1030, 1047 (9th Cir. 2023) ("Whether a witness can be compelled to testify remotely despite falling outside Rule 45's geographic limitations" is an "important issue of first impression.")).

The district court's order does not raise any important problems or questions of first impression. The unpublished order simply applied, to the specific facts of this case, the long-settled rule that attorney misconduct requires a new trial when it "permeate[s] an entire proceeding." 1-ER-24. The "ordering of a new trial … is not an uncommon feature of any trial which goes to verdict" (*Allied Chem.*, 434 U.S. at 36), and there is nothing "new and important" about the district court's order finding misconduct.

Petitioners do not contend that there is an "important" question here and argue only that their petition presents an "issue of first impression" because "no published case has held that a new trial may be ordered for purported 'attorney misconduct' where the purported

38

misconduct is: (1) the introduction of evidence the district court admitted; (2) the publishing of exhibits the court permitted counsel to publish; and (3) the inquiry into subjects the court expressly allowed." Pet. 25. Petitioners interpret the "first impression" factor at far too specific a level of granularity. An issue of first impression is a purely legal question that this Court has never addressed, not whether settled law applies to idiosyncratic circumstances.

## III. The Requested Relief is Overbroad.

In its new trial motion, UPS raised *several* grounds for ordering a new trial: (1) the jury's verdict was contrary to the clear weight of the evidence; (2) the compensatory damages award was unsupported by the evidence; (3) Gratton's counsel committed misconduct; and (4) the district court did not instruct the jury on the WLAD's same-decision defense. 1-SER-4.

The Petition challenges only the attorney-misconduct issue and does not even mention all the other grounds for a new trial presented in UPS's motion, yet Petitioners ask this Court to fully restore the $39.6 million judgment against UPS. Even if a writ of mandamus were somehow warranted, such sweeping relief would be improper.

39

If this Court determines that a writ of mandamus is necessary, it should do nothing more than order "that offending commentary be expunged from the public record" (*In re Williams*, 156 F.3d 86, 92 (1st Cir. 1998)), and remand to the district court to consider the remaining arguments presented in UPS's new trial motion. Restoration of the jury's unprecedented verdict is unnecessary to remedy any reputational harm to Gratton's counsel.

The jury's $39.6 million verdict for garden-variety emotional distress is so "monstrous" and "shocking to the conscience" that remittitur is required. *Brady v. Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 1988). Washington appellate courts have never upheld anything close to $39.6 million for a violation of the WLAD. *Kingston v. Int'l Bus. Machines Corp.*, 2022 WL 3031590, at *2 (9th Cir. Aug. 1, 2022) ("[S]o far as we have been able to determine, no Washington court has upheld an award of greater than $1.5 million in non-economic damages in a wrongful-termination case."). Nor have federal courts ever awarded more than a few million dollars in comparable Section 1981 actions. *See* 1-ER-13–15 (collecting cases). The district court did not have occasion to reach UPS's arguments for remittitur in its motion for new trial, because it granted

40

the motion on attorney-misconduct grounds. At most, then, this Court should remand for the district court to vacate the finding of attorney misconduct and consider whether remittitur of the jury's unprecedented award is warranted.

## CONCLUSION

The petition for a writ of mandamus should be denied.

Dated: June 12, 2025

Respectfully submitted,

s/ Theane Evangelis

Theane Evangelis
Madeleine F. McKenna
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Blaine H. Evanson
Min soo Kim
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

41

Joshua R. Zuckerman
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant-Real Party in
Interest United Parcel Service, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 25-1724

I am the attorney or self-represented party.

**This brief contains** 7,691 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [            ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Theane Evangelis          **Date** June 12, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I certify that on June 12, 2025, I filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit through the appellate CM/ECF system, which will send a notification of such filing to all counsel of record.

Dated: June 12, 2025                   Respectfully submitted,

                                       s/ Theane Evangelis
                                       _____

                                       *Attorneys for Defendant-Real Party in Interest United Parcel Service, Inc.*

1